# McCAULLY v. UNITED STATES.

APPEAL AND ERROR; CONTEMPT OF COURT; CORRUPT SOLICITATION OF JURYMEN; EVIDENCE.

1. A record on appeal should contain, and should purport to contain, the substance of all the testimony in the case, where it is desired to have the ruling of the appellate court on the whole case.

2. A prima facie case of guilt is made out in support of a charge of contempt of court by attempting to corruptly influence a juryman in a pending cause, when it is shown that two days before the trial of the cause, after the defendant had called twice at the juryman's residence without seeing him, the latter called at the defendant's place of business, where the defendant stated to him that there was a man in trouble whom a railroad company was trying to down; that the juryman thereupon refused to talk, as he was on the jury, and left; that the case was one of embezzlement, in the trial of which the defendant testified to an intimate acquaintance with the accused, and as to his honesty and good character; and denied calling at the house of the juryman; and where the defendant under such circumstances does not testify

and makes no effort to break the force of such testimony save by offering evidence as to his good character, this court will not disturb a finding that he was guilty of contempt of court on the ground that there was no sufficient proof of his guilt.

3. An attempt to corruptly influence a juryman in a pending cause is a contempt of court, within the meaning of U. S. Rev. Stat. § 725, U. S. Comp. Stat. 1901, p. 583, restricting the power of United States courts to punish for contempt to cases of misbehavior in the presence of the court, "or so near thereto as to obstruct the administration of justice," although the corrupt solicitation occurs half a mile away from the courthouse, at the place of business of the accused.

No. 1529.   Submitted April 7, 1905.   Decided April 17, 1905.

HEARING on an appeal by the respondent from an order of the Supreme Court of the District of Columbia adjudging him guilty of contempt of court for an alleged attempt to corruptly influence a juryman in a pending cause, after a rule had been laid upon him to show cause why he should not be adjudged in contempt of court therefor.                    *Affirmed.*

The COURT in the opinion stated the case as follows:

The appellant, Benjamin F. McCaully, was adjudged in the supreme court of the District of Columbia to be in contempt of that court for an unlawful attempt to corrupt a juror therein, and thereby corruptly to influence the administration of justice; and from the judgment therein rendered against him he has appealed to this court.

The proceedings were commenced by the filing of an affidavit by one of the assistant attorneys of the United States for the District of Columbia on January 13, 1905, wherein it was alleged, partly upon information and belief, in substance that the appellant, on November 26, 1904, with reference to a cause of the *United States* v. *Samuel Gassenheimer,* set down for trial in that court on that day, had corruptly attempted to influence one Benjamin F. Shaw, who was at the time a juror in that court and liable to be called as such in said cause.   Thereupon a rule to show cause why he should not be punished for con-

tempt of court was issued and served, with a copy of the affidavit, upon the appellant. The latter appeared and moved to quash the rule; but the motion was overruled. Then he pleaded "not guilty," and testimony was taken both for and against him, upon which the court made the following finding:

"The court doth find from the evidence as follows: That, upon the 26th day of November, 1904, there was pending in the court here a certain indictment, No. 23,253, wherein the United States was complainant and one Samuel Gassenheimer was defendant, which indictment duly charged him, the said Gassenheimer, with a criminal offense against the law of the District of Columbia; that he, the said Gassenheimer, had theretofore pleaded 'not guilty' thereto; that, upon said 26th day of November, 1904, the said indictment, and the issues joined upon said plea, stood regularly upon the calendar of this court for trial upon the 28th day of November next ensuing; that upon the 19th day of September, 1904, the regular petit jury for the October term, 1904, of this court, was duly summoned, and on the 6th day of October, 1904, qualified and impaneled; that one Benjamin F. Shaw was one of those regular petit jurors for said term, himself duly summoned, qualified, and impaneled, and so had continued and was such upon said 26th day of November, 1904; that all aforesaid was on said day known to said Benjamin F. McCaully; that, on the said 28th day of November, 1904, the said indictment and the issues arising upon said plea thereto came on for trial in the court here before the Hon. Dan Thew Wright, justice, and the jury; that a petit jury was duly impaneled from amongst said regular jurors, and sworn to try the same; that said Benjamin F. Shaw was one of the said jurors so impaneled and sworn; that on said 26th day of November, 1904, said Benjamin F. McCaully did address and talk to the said Benjamin F. Shaw of and concerning the said criminal cause so as aforesaid by indictment pending between the United States and Samuel Gassenheimer, criminal No. 23,253, with the corrupt intent and purpose at the time upon the part of him, Benjamin F. McCaully, unlawfully and corruptly to influence him, the said Benjamin F. Shaw, in

the discharge of his duty as a juror as aforesaid, and with the intent at the time upon the part of him, the said Benjamin F. McCaully, thereby corruptly to obstruct the administration of justice in the cause so pending between the United States and the said Samuel Gassenheimer; and the court finds that he, the said Benjamin F. McCaully, did thereby unlawfully and corruptly undertake and attempt to obstruct the administration of justice, and that he is guilty of a contempt of this court; whereupon it is considered and adjudged by the court that the said Benjamin F. McCaully is guilty of a contempt of this court, and it is considered by the court that for his said offense the said Benjamin F. McCaully be imprisoned in the United States jail in and for the District of Columbia for the period of six months, to take effect from and including the date of his arrival at said jail."

The testimony was reduced to writing, and a bill of exceptions was taken by the defendant, whereby it appeared that, upon the conclusion of this testimony, he moved for the discharge of the rule against him on the ground that the court, as he claimed, was without jurisdiction to try him in a summary way without a jury, and that the evidence did not support the charge. The motion was overruled, and he excepted; and the cause is now before us for review.

*Mr. A. A. Birney* and *Mr. Henry F. Woodard,* for the appellant:

1. The court was wholly without jurisdiction to issue the rule upon the showing made in the affidavit, or to try summarily the charges, or to adjudge the appellant guilty and sentence him after it affirmatively appeared that the alleged attempt to influence the juror was made at a place remote from the court, at a time when the court was not in session. Sec. 725 R. S. U. S.; *Moss* v. *United States,* 23 App. D. C. 475; U. S. Rev. Stat. sec. 5399; *Ex parte Robinson,* 19 Wall. 505; *Ex parte Savin,* 131 U. S. 267; *Re Cuddy,* 131 U. S. 280; *Eilenbecker* v. *Plymouth County,* 134 U. S. 37; *Hillman's Case,* 79 Fed. 749;

*Ex parte Buskirk,* 72 Fed. 14; *Ex parte Schulenberg,* 25 Fed. 211; *Contra, Brule's Case,* 71 Fed. 943.

2. Upon the evidence, all of which is certified to this court, the appellant was wrongfully convicted. The contemner must be proven guilty beyond a reasonable doubt. 4 Enc. Pl. & Pr. p. 768; 3 Enc. Ev. p. 448. The necessity for review in such cases is forcefully stated by Lacombe, circuit judge, in *Spofford's Case,* 62 Fed. 443.

3. Under sec. 226, Code D. C., this court, we submit, may review a final judgment in a contempt case as in any criminal case. We concede that for a contempt in the face of the court no review may be had of the fact that a contempt was committed as recited in the judgment, but we insist that when the alleged contempt is constructive, and to be determined upon evidence, there may be a review of the case and a reversal *"where the record discloses no reasonable evidence of any contempt having been committed."* To this effect are many decisions. 4 Enc. Pl. & Pr. pp. 811, 812. The decisions of the Supreme Court are not opposed to this view. *Re Chetwood,* 165 U. S. 443; *Tinsley* v. *Anderson,* 171 U. S. 104; *Eilenbecker* v. *Plymouth County,* 134 U. S. 31.

*Mr. Morgan H. Beach,* United States Attorney for the District of Columbia, and *Mr. James S. Easby-Smith,* Assistant, for the appellee.

Mr. Justice Morris delivered the opinion of the Court:

It is conceded, and it could not well be denied, that an attempt corruptly to influence a juror in a cause pending in court, is a contempt of court and a most serious offense against the administration of justice. But the contention here on behalf of the appellant is, as it was in the court below: (1) That there is no sufficient proof of the appellant's guilt; and (2) that in any event, inasmuch as the alleged offense was charged, and the fact appeared in the evidence, to have been committed at a place remote from the courthouse and from the place where the

court was sitting at the time, the court below was without jurisdiction to try the appellant and punish him without presentment by a grand jury and verdict of a petit jury in the usual mode of the administration of the criminal law. Of course, if either one of these propositions is well founded in law, the appellant should be discharged. But we are of opinion that neither one is tenable.

1. With reference to the first proposition, that of the supposed insufficiency of the testimony to sustain the charge against the appellant, it is true that at first sight the testimony is apparently meagre. But upon closer examination it will be found ample to constitute a prima facie case against the defendant, which he has made no effort to overcome. We may assume that the record contains the substance of all the testimony given in the case, although it does not in terms purport to do so, as it should when it is desired to have the ruling of the appellate court on the whole case. *Gunnison County* v. *E. H. Rollins & Sons,* 173 U. S. 255, 43 L. ed. 689, 19 Sup. Ct. Rep. 390. With the exception of some testimony to show good character on behalf of the defendant, the evidence is exclusively that given on behalf of the prosecution, and it is wholly uncontradicted. It shows that two days before the trial of the case, in regard to which the alleged influence was sought to be used, the defendant called twice at the residence of one of the jurors, and expressed to members of his family a desire to see him, the juror himself not being at home at the time; that thereupon the juror went to the defendant's place of business to know what he desired; that the defendant then stated to him that there was a man in trouble; that a railroad company was trying to down him; and that the juror then stated that he was on the jury, and could not talk, and walked out of the place of business. The case referred to was the case of *United States* v. *Gassenheimer,* which grew out of an embezzlement of railroad tickets from the Baltimore & Ohio Railroad Company; and it was shown that the appellant was personally and intimately acquainted with Gassenheimer; that on the trial of that case he had testified on behalf of Gassenheimer as to his honesty and good character, and

that in his testimony in this case he had denied calling at the house of the juror.

The defendant made no attempt to break the force of this testimony. He did not take the stand himself as a witness, and he contented himself with the presentation of a certificate of good character from some of his associates. If his business with the juror had been legitimate, it would have been easy for him to say so, and to state what that business was. But it is very clear that his purpose was to corrupt the juror and to influence him unduly in the case mentioned, in which it was probable that he would serve, and in which he did actually serve, as a juror. There can be no other reasonable inference from the testimony, and we think, therefore, that the testimony was sufficient to prove the appellant's offense.

2. The appellant's second proposition, namely, that the court was without jurisdiction to punish the appellant's offense, even if it was sufficiently proved, is based upon certain provisions of the Revised Statutes of the United States, which are taken to limit and restrict the power of the Federal courts to punish for contempts of their authority. These provisions are contained in sections 725 and 5399, U. S. Comp. Stat. 1901, pp. 583, 3656, which are taken from an act of Congress of March 2, 1831, 4 Stat. at L. 488, and which are in the following terms:

"Sec. 725. The said courts [of the United States] shall have power to impose and administer all necessary oaths, and to punish by fine or imprisonment, at the discretion of the court, contempts of their authority; *provided,* that such power to punish contempts shall not be construed to extend to any cases except the misbehavior of any person in their presence, or so near thereto as to obstruct the administration of justice, the misbehavior of any of the officers of said courts in their official transactions, and the disobedience or resistance by any such officer, or by any party, juror, witness, or other person, to any lawful writ, process, order, rule, decree, or command of the said courts."

"Sec. 5399. Every person who corruptly, or by threats or force, endeavors to influence, intimidate, or impede any wit-

ness or officer in any court of the United States, in the discharge of his duty, or corruptly, or by threats or force, obstructs or impedes, or endeavors to obstruct or impede, the due administration of justice therein, shall be punished by a fine of not more than $500, or by imprisonment not more than three months, or both."

It is argued that the appellant's offense, if we assume it to have been proved, is not punishable under section 725, under which the court proceeded in this case, as well as under the common law, inasmuch as it was not committed "in the presence of the court, or so near thereto as to obstruct the administration of justice," but at a distance from the court,—at the appellant's place of business, a half a mile or more away; but it is punishable under section 5399 after a jury trial in the regular way, as all other offenses are tried and punished. It is admitted that it could be punished summarily under section 725, if committed within the courthouse, even in an obscure and out-of-the-way corner of it, or at or outside of its portals; because then it would come within the letter of the statute. The claim is that the place of solicitation of the juror being far removed from the courthouse, the statute expressly removes the act from the cognizance of the court as an act of contempt, and simply leaves it to be punished as an ordinary criminal offense under section 5399.

We cannot assent to this view of the law. There is no possible difference between the corrupt solicitation of a juror at the courthouse door, or in the corridors of the courthouse, or in some obscure nook of the building, and a precisely similar corrupt solicitation at the home of the juror or the place of business of the corrupter. The offense is no greater in the one case than in the other, and its influence upon the administration of justice is precisely the same in both cases. We cannot think that, in the enactment of the statute in question, Congress had any intention to institute a topographical discrimination between acts which have no possible relation to the matter of greater or less distance from the courthouse. As was said by Mr. Justice Brown of the Supreme Court of the United States,

when sitting in the District Court, in *Ex parte Schulenburg,.* 25 Fed. 211, the words of the statute "seem to me to refer rather to riotous or unseemly conduct in the court room, or in such immediate proximity thereto as to interrupt the sessions of the court or the orderly conduct of business therein, and not to embrace constructive contempts of its authority." And the action of the appellant was at least a constructive, if not an actual,. contempt of the authority of the court.

In the determination of the question here involved, we are not greatly aided by the adjudicated cases. In no one of them has this precise point arisen or been determined. In the case of *Re Savin,* 131 U. S. 267, 33 L. ed. 150, 9 Sup. Ct. Rep. 699, it was held that an attempt in the courthouse to deter a witness from testifying was a contempt of court committed in the presence of the court, and punishable under section 725 of the Revised Statutes. In the case of *Re Cuddy,* 131 U. S. 280, 33 L. ed. 154, 9 Sup. Ct. Rep. 703, there was, as in the present case, an attempt corruptly to influence a juror, but the court notes the fact that it was not made to appear in the record where the act was committed, whether in the presence of the court or at a distance from it, and it specially reserved any determination of the question which is now before us. It was said by Mr. Justice Harlan, speaking for the court, in the conclusion of the opinion: "Whether the attempt to influence the conduct of the  *  *  *  juror  *  *  *  was or was not, within the meaning of the statute, misbehavior so near to the court 'as to. obstruct the administration of justice,' however distant from the court building may have been the place where the appellant met him, is a question upon which it is not necessary to express. an opinion."

In the case of *In re Brule,* in the United States district court for the State of Nevada, 71 Fed. 943, there was a contempt of court by the bribery of a witness to hide himself and remain away from the court. The act was done at a considerable distance from the courthouse, and yet it was held to be punishable as a contempt under section 725. This case is directly in point, and yet not so strong as that now before us, be-

cause, if we may recognize grades in such offenses, the corrupt solicitation of a witness is not as grave an offense as the corrupt solicitation of a juror.

By the opinion of the Supreme Court of the United States in the case of *Re Cuddy*, the question before us is left an open one, and it is incumbent upon us to determine it as best we may in the absence of authoritative enunciation from our tribunal of last resort. Upon reason and analogy, and with due regard, as we think, both to the letter and the spirit of the statute, we are of opinion that, in the contemplation of the statute, the appellant's act was committed in the presence of the court. As we have intimated, the question is not one of geography or topography, or propinquity or remoteness, but one of direct influence upon the administration of justice. The administration of justice is equally obstructed wherever the act is done; and the place of the solicitation is absolutely of no consequence whatever. Whether the act was done in the courthouse, or a mile or 100 miles away, the result is precisely the same; the disturbance to the court is precisely the same. The act in its nature is not one dependent upon location for its greater or less influence on the administration of justice. A riotous disturbance in the courthouse, or so near thereto as to disturb the proceedings of the court, is a very different thing from a riot 5 or 10 miles away, which by no possibility could interfere with those proceedings. In the case of such a disturbance the matter of location is a most important circumstance. But the bribery of a juror or the intimidation of a witness pollutes the fountains of justice at their source, and reach at once to the very seat and shrine of the administration of justice, whatever be the place where the formal act is done. Under such circumstances the court is wherever the juror or the witness is; and there is no question of locality in the case.

It often happens, and it was the general usage in former times, that juries are kept together during the trial of important cases, and are taken to their meals to hotels or restaurants at some distance from the courthouse. If while at such distance from the courthouse, can it be that, if they are corruptly solicit-

ed, the person who seeks to corrupt them is not guilty of contempt of court to be punished summarily as a contempt? And if, in trials extending over several days, they are permitted to disperse at night and go to their own homes, as is now usually the custom, can it be that corrupt solicitation of one of them at his own home is less a solicitation, and less an obstruction of justice, than if the solicitation were had within the purlieus of the courthouse? We find no good reason for any such distinction. Every juror is part of the court wherever he is. Under our common law the jury is as much a part of what may be designated as the machinery of the administration of justice as is the judge, and a corrupt attempt to influence the jury, or any individual member of it, is an offense differing only in degree from a similar attempt to corrupt the judge. Judge and jury are component parts of the court. An attempt upon the integrity of the jury, or upon the integrity of any individual juror, is a direct attack upon the court; and the court is entitled to protect itself from all such attacks by the methods which the common law has established for the purpose, namely, by the way of summary proceedings for contempt of court.

Now, if it be true, as it seems to us to be, that an attack upon the integrity of an individual juror is an atttack upon the integrity of the body to which he belongs—for it only requires the corruption of one to destroy the efficiency of the whole—and such attack therefore is a direct attack upon the court, how can it reasonably be argued that the act has not been done in the presence of the court? We scarcely know how it could come nearer home to being an obstruction to the administration of justice.

We are not unmindful of the considerations, so forcibly emphasized by counsel, which led to the enactment of the act of Congress of March 2, 1831, now embodied in the Revised Statutes as sections 725 and 5399, U. S. Comp. Stat. 1901, pp. 583, 3656, or of the great wrong that might sometimes be done by violent or irritable judges in the exercise of the somewhat arbitrary, and, almost of necessity, autocratic power possessed by courts of justice to punish summarily for contempts of their

authority. It is unfortunate that this power has sometimes been abused or used oppressively; but the abuse of the power, although it has been said, and very properly said, that there is no place in our governmental system for the exercise of irresponsible power, is no sufficient reason against the exercise of the power in proper cases. Its existence is essential for the existence of courts themselves. In no other way can they insure their efficiency or conserve their usefulness. The writ of habeas corpus will generally secure the individual citizen from oppression. But it is necessary at the same time to preserve unimpaired the power of courts of justice to punish for contempts of their authority. The one is just as essential as the other to the preservation of civil liberty; for civil liberty and the due administration of justice are necessary concomitants of each other.

There has been no question made of our right to entertain the appeal in this case, and we make none ourselves.

From what we have said it follows that the order appealed from must be affirmed. And it is so ordered. *Affirmed.*

A petition by the appellant to the Supreme Court of the United States for a writ of certiorari was denied by that Court May 19, 1905.