## STATE *v.* W. R. RAWLES *et al.*

[60 South. 782.]

CRIMINAL LAW. *Banks and banking. Receiving deposits while insolvent. Code* 1906, *section* 1169.

Code 1906, section 1169, providing that if the president, manager, cashier, etc., of any bank or broker's office, or establishment conducting the business of receiving on deposit the money, or other valuable things, of such persons, shall receive any deposit, knowing or having good reason to believe the establishment to be insolvent, without informing the depositor of its condition, he shall be imprisoned, etc., was intended not only to protect depositors who are officers or agents of banks, but the general public making deposits in any bank, etc., the word "such" in the statute being merely a clerical error for which the word "other" should be read.

APPEAL from the circuit court of Lawrence county.
HON. J. C. WARD, Special Judge.

W. R. Rawles and others were indicted for receiving deposits in an insolvent bank. From a judgment sustaining a demurrer to the indictment, the state appeals.

The facts are fully stated in the opinion of the court.

*Frank Johnston,* assistant attorney-general, for the state.

The whole question in the case is as to whether or not in the judicial interpretation of section 1169 of the Code

of 1906, the word "such" on the fourth line, preceding the word "persons," upon a fair interpretation of the law can be construed as "other" persons.

This statute is the same as section 2184, of the Code of 1880, in every respect except in the use of this one word, and section 2814 of the Code of 1880 uses the words "other persons." This section of the Code of 1880 was re-enacted *in totidem verbis* in section 1089 of the Code of 1892, the words "other persons" appearing therein. When section 1089 of the Code of 1892 was brought forward into the codification of the Code of 1906, by an evident clerical error or mistake, the word "other" preceding the word "persons," was omitted, and the word "such" was interpolated into its place before the word "persons." By the Act of 1912, page 288, this clerical error was cured by the new statute which used the word "other" preceding the word persons, the same as the Code of 1880, and the Code of 1892.

It is perfectly evident on the face of section 1169 of the Code of 1906 that the literal construction of the phrase "such persons" in the statute, would make the effect and meaning of the statute an absurdity. It is impossible to assume or suppose that the legislature intended to use the words "such persons" instead of the words "other persons," because that would be to assume that the legislature by the use of the words "such persons" had relation to the only persons named in the act, which are the officers and employees of the bank, and the idea of legislating that they should be protected against themselves is the height of absurdity. It is evident, therefore, from the context of section 1169 of the Code of 1906 and the context of the Code of 1880 and of 1892, and the amendatory act of March 8, 1912, which latter was for the sole and single purpose of enacting the word "other" in place of the word "such," that the word "such" is a mere clerical error.

The only question in the case, therefore, for consideration, is whether the court can upon judicial interpretation of this statute, especially in connection with the history of this section of the Code, correct this clerical error and carry out the real purpose and intention of the legislature.

The general rule of construction on this subject is thus stated in the text of Am. & Eng. Ency. of Law, namely: "Where it is manifest upon the face of any act that an error has been made in the use of words, the court may correct the error and read the statute as corrected in order to give effect to the obvious intention of the legislature." 26 Am. & Eng. Ency. of Law, note 2, page 655. There is a voluminous citation of authorities in support of this text, in note 2, 26 Am. & Eng. Ency. of Law, page 655.

The rule is thus announced in Cyc., namely, that in verbal inaccuracies, the clerical errors can be corrected on interpretation in order to carry out the intention of the legislature. 36 Cyc., sec. 1126, note (n). This is unquestionably a clear, explicit, and full statement of the rule of interpretation of statutes, containing the defects mentioned in this particular class.

Of the many cases on this subject, for the convenience of the court, I will cite some of them as illustrative of the character of defects, clerical omissions, and mistakes, which the court can correct upon judicial interpretation of the statute.

In *Ex parte Hedley*, 31 Cal. ——, there was a criminal statute of the state defining jurisdiction of crimes and misdemeanors, and the statute, in defining the locality and the place of the crime, used the term "without the state" but, upon interpretation, the court found that the intention and purpose of the legislature was to say "within the state," and so substituted the last phrase for the first, thus giving efficacy to the statute.

In *Byrd* v. *Board of Commissioners of Kenton County*, 95 Ky. 195, the supreme court of Kentucky decided in

regard to a statute which prescribed the specifications of macadamized roads in the state, and where the word "width," which should have been "depth," was used, the court struck out the word "width" and judicially interpolated the word "depth" to give the statute a reasonable and natural meaning. The statute would have been an absurdity had it been allowed to remain "width" instead of "depth," as there was no meaning attached to it.

In a Maryland case, *Waters* v. *Laurel,* it was held that this was a sound doctrine of law, and applied it to an enabling statute which authorized the town of Laurel to issue certain bonds for internal improvements. In a particular part of the act, the word "Laurel" was omitted. The statute read "city council," and the court, being satisfied from the context of the statute that it meant "the city council of Laurel," added the word Laurel, thus carrying out the legislative intent and purpose.

In *Moody* v. *Stevenson,* a Minnesota case, a statute read "all penal judgments" instead of "all final judgments," and the first phrase being a patent absurdity, the court judicially interpolated the phrase "all final judgments," knowing that this was in conformity to the legislature's opinion when enacting the law.

The Texas Supreme Court in *Chambers* v. *Street,* 25 Tex. 311, in reviewing a statute repealing part of article 411 of the Penal Code of Texas, which in its context repealed the "provisions" of article 411, held that the manifest purpose of the act as indicated by the purpose and intention of the legislature was to repeal the "proviso," and the court therefore, acting on this, substituted the word "proviso" for the word "provisions."

So in the case of *Lancaster County* v. *Treig,* 28 Pa. St., ——, the state had been amending the act providing for the opening of streets in a municipality or a city, and instead of using the proper term "city" the act used

the word "county." The court decided that the manifest purpose of the act was to provide for the opening of the streets of a city, and so accordingly interpreted the law as if the word "city" had been written in the statute originally. The question came before the court in 160 Pa. St. ——, and was again held to be a sound doctrine of law.

In California the court, *In re Bulger*, had before it a statute regulating fire insurance companies in the state, and the statute used the words, "board of underwriters," in an important connection. There was no such board in the state, or known to the court, and as it was manifest that the legislature meant the board of fire underwriters, the court judicially interpolated these words in place of the "board of underwriters."

The supreme court of Utah, in case of *White* v. *Railroad Co.*, 25 Utah, 346, the court followed this doctrine. There are numerous authorities on this question, but I will not weary the court by citing them.

I will make the observation in conclusion that it never could have been the intention of the legislature to use the word "such" persons, instead of the term "other" persons. As I have stated, the statute would have no meaning at all, and it would be an absurdity, and it would leave no statutory offense defined by the Code of 1906, from the year 1906 to the time of the passage of the amendatory act of 1912; so that all the crimes of this character occurring in this interim would not be punishable in any manner in the courts of this state. Such consequences would result from a literal construction of the terms of the statute, contrary to the patent meaning and intention and purpose of the legislature.

*Longino & Ricketts,* for appellees.

The indictment was found under section 1169 of the Code of 1906, and the appellees demurred thereto on the ground substantially stated therein, viz., that it did not

appear from the indictment that the depositor named therein was the president, cashier, teller, clerk, or other employee or agent of a bank or broker's office or establishment conducting the business of receiving on deposit money, etc.

The court below sustained the demurrer following the construction put upon said section of the Code by this court in its decision rendered December 4, 1911, in the case of *State* v. *E. B. Traylor*, 56 So. 521. From this ruling the state appealed to this court.

The case now before the court in its legal features is identical in every particular to the Traylor case above referred to. The demurrer in both cases being predicated upon the meaning of said Code section 1169, which reads as follows: "Section 1169 of the Code of 1906: If the president, manager, cashier, teller, assistant, clerk, or other employee or agent of any bank or broker's office or establishment conducting the business of receiving on deposit the money or other valuable things of such persons shall remove or secrete or conceal the assets of effects of such establishment for the purpose of defrauding any of the creditors of the establishment, or shall receive any deposit knowing or having good reason to believe the establishment to be insolvent, without informing the depositor of such condition, on conviction he shall be imprisoned in the penitentiary not longer than five years."

The sole point involved in the Traylor case, and for consideration by the court in this one, is as to the meaning and effect of the word "such" in the said statute.

The appellant's contention is that the word "such" in the statute is a clerical error and that the legislature intended the use of the word "other" instead.

There can be nothing better settled than was this point by the court in the Traylor case and it was decided against appellant's contention. The court on that point said as follows: "It is insisted by the state that the use of the

word 'such' for 'other' was a clerical error, but we do not know any rule or principal which justifies us in so holding. To hold this indictment good it would be necessary to discard and ignore every known rule of grammar—the science which treats of the principle of language, the study of the forms of speech and their relations to one another. There is no way or method known to educated man by which they can interpret human speech except by construing the words in their relation to one another. . . . We cannot fritter or pare away what was perfectly and intelligently expressed by the lawmakers in order to effectuate what we may suppose was the legislative will.''

The court in defining the application and meaning of that statute said: ''It necessarily follows that under the letter of the statute the legislature created a well-defined crime. The statute, therefore, is not senseless or meaningless, but the question arises, have the courts the right to create a law, the violation of which is a crime, or to say that the legislature intended to create a different crime from the one specified in the statute? The sole power of the court is to enforce the statute as written by the legislature. The court has no right to add anything to, or take anything from, the statute where its meaning is clear. It is only in cases where the statute is ambiguous that any rule for determination or construction of statutes can be resorted to. The word 'such' is not a synonym of the word 'other.' It is therefore difficult to conceive where the words can be used interchangeably.''

That case and the one before the court being; as above stated, identical, depending for decision on the sole point of construction as to the meaning of the word ''such'' in section 1169 of the Code of 1906, the decision in the Traylor case becomes absolutely the law governing this case as fully and completely as if said decision had been written into the statute by the legislature itself.

No explanation or excuse, therefore, can be found for the pendency of the present case here except perhaps in the hope that this court may reverse the decision rendred in the Traylor case—a hope, perchance, based mainly upon the fact that the personnel of the court is changed by the retirement of the two justices who held to the majority view of said case, and that their successors may concur in the views of the dissenting justice who is still a member of the court.

Though the opinion rendered by the majority of the court in the Traylor case seems to us to have been thoroughly considered and elaborately in every conceivable point in the construction of the statute and that the court brought to the support of its decision the best authorities known to the jurisprudence of the country, yet the appellant is unwilling to accept that opinion as being a correct construction of the statute. It seems to us that the difficulty in the way is to be found not in the meaning but in the seeming injustice of the statute which limits its protection to a certain class of depositors only, namely, banks, trust companies, etc., and does not extend to the general public. But we insist that though the statute may seem to or, in fact, does work a hardship and injustice to all bank depositors, except those to which the statute in question is limited, the courts should not for this reason permit themselves to deviate from the plain letter of the law. The weight of authority, we maintain, is to the effect that if there is a hardship resulting from any law as it is written, either to a general or special class of people, that fact is a consideration for the legislature and not a court of justice. If it were otherwise the consequence would be that the law would cease to be a system. Black's Law of Judicial Precedents, page 213.

The Supreme Court of this State, in *Koch et al.* v. *Bridges et al.*, said: "There is no more propriety in dispensing with one positive requirement of the statute

than another; a whole statute may be thus dispensed with when it stands in the way of the caprice or will of the judge. Besides, it would vest the discretionary power in the ministerial officers of the law, which is dangerous to private rights. It is dangerous to attempt to be wiser than the law, and when its requirements are plain and positive the courts are not called upon to give reasons why it was enacted. A judge should rarely take upon himself to say what the legislature has required is unnecessary. He may not see the necessity of it, still it is not safe to assume that the legislature did not have a reason for it. In that case the judge cannot interfere to defeat that object of the statute, however puerile it may appear. Where the intention of the legislature is clearly ascertained by the words of the statute the courts have no other duty to perform than to execute the legislative will without any regard to their own views as to the wisdom or injustice of the particular enactment. No principal is more firmly established or rests on more secure foundation than the rule which declares when a law is plain and unambiguous, whether it be expressed in general or limited terms, that the legislature shall be intended to mean what it has plainly expressed and consequently no room is left for construction." *Koch et al.* v. *Bridges et al.,* 45 Miss. 247, *et seq.*

It is a familiar maxim of the law that the expression of one thing is the exclusion of another; and that the rule of statutory construction lies wholly within the domain of ambiguity.

What the legislature intended can be derived only from the words it used in the act itself, and there should be no speculation as to its meaning beyond the reasonable import of such words, nor any casting about by a court for excuses to put a different interpretation thereon to make it better meet the court's ideas of justice or reason. In short, the meaning of the act must be extracted from the words of the act and not suppositions or conjectures *aliunde.*

Mr. Justice Story, 2 Peters (U. S.) 93; 26 Eng. & Am. Ency. (par. 2), 98, 99:

It is better, say the authorities, to abide by the consequence of the act than to put upon it a construction not warranted by it, in order to give effect to what we may suppose to have been the intention of the legislature.

We insist that section 1169 of the Code has not only been properly construed by the supreme court in the Traylor case, but that said construction has received the adoption and approval of the legislature of the state, a fact to be found in the amendment of the section by the legislature in accordance with the recommendations of the court in the Traylor case, page 2. By said amendment the old law was re-enacted which had been in force from 1880 to 1906. In the amendment the word "such" was supplanted by the word "other" so as to meet the identical views contended for by the appellant in this cause, and to conform to the old law from 1880 to 1906. This view by analogy is clearly borne out by Black's Law of Judicial Precedents, pages 235-6 and cases there cited.

Cook, J., delivered the opinion of the court.

Appellants were indicted for receiving deposits in a bank, of which they were officers and employees, knowing the bank to be insolvent. The trial court sustained a demurrer to the indictment, following *State* v. *Traylor,* 100 Miss. 544, 56 South. 521.

This appeal brings before us a review of that case. When this decision was made, a dissenting opinion was filed by Judge Smith. Since then the two judges approving the decision have retired. We thoroughly appreciate the value of the rule, universally approved by courts of last resort, that decisions construing statutes should never be overruled unless it appears, beyond question, that the decision was incorrect. It is manifest to us that the construction given to section 1169 of the Code

of 1906 absolutely nullified a wise and salutary law, and rendered the same meaningless. Since the decision, the legislature of 1912 has refused to acquiesce in the court's interpretation of the statute by passing a declaraory statute affirming and indorsing the interpretation of the legislative intention as given in the dissenting opinion.

We have already refused to follow *State* v. *Traylor.* See *State* v. *Ware,* 59 South. 854. We adopt the dissenting opinion in *State* v. *Traylor, supra,* as the proper construction of section 1169.

*Reversed and remanded.*