## WARRING v. COLPOYS, U. S. Marshal.

### No. 7921.

United States Court of Appeals for the District of Columbia.

Decided July 29, 1941.

Writ of Certiorari Denied Nov. 10, 1941.

See 62 S.Ct. 184, 86 L.Ed. ——.

Myron G. Ehrlich, of Washington, D. C., for appellant.

Dennis McCarthy, Asst. U. S. Atty. (Edward M. Curran, U. S. Atty., and John W. Fihelly and Charles B. Murray, Asst. U. S. Attys., all of Washington, D. C., on the brief), for appellee.

Before VINSON, EDGERTON, and RUTLEDGE, Associate Justices.

VINSON, Associate Justice.

This is an appeal from the District Court's discharge of a writ of habeas corpus. The litigation grows out of the same earlier proceedings ‹as did the case of Warring v. Huff,[1] also decided today.

Appellant was sentenced on February 24, 1939, upon pleas of guilty, to four criminal contempt charges. The first charge stated that appellant had used money to influence a prospective juror. The second charge stated that appellant had investigated the possibility of influencing another prospective juror. Admittedly, and as shown by the rule to show cause, these acts occurred some days before the trial commenced, and some distance from the court house, although within the District of Columbia.

Appellant contends that the court had no power to convict him in a criminal contempt proceeding on these charges, for the statute delineating the court's contempt power provides, inter alia, "Such power to punish contempts shall not be construed to extend to any cases except the misbehavior of any person in their [courts'] presence, or *so near thereto* as to obstruct the administration of justice, * * *".[2] (Ital. supplied.) Appellant then concludes that since he has served the valid sentences imposed upon him (the other two contempt sentences and a criminal conspiracy one), he should be discharged from custody on this writ of habeas corpus.

The "so near thereto" is old law as far as Congressional enactment goes. It was passed in 1831.[3] It succeeded the Act of 1789 which provided simply that courts had power to punish contempts of their authority.[4] The contempt provision of the Act of 1831 was Section 1. Section 2 of that Act listed certain acts which obstruct justice as offenses which were liable to punishment after indictment.[5] Thus reading Section 2 with Section 1 and considering the background[6] which brought

[1]— App.D.C. ——, 122 F.2d 641, decided July 29, 1941.
[2] 28 U.S.C.A. § 385.
[3] "That the power of the several courts of the United States to issue attachments and inflict summary punishments for contempts of court, shall not be construed to extend to any cases except the misbehaviour of any person or persons in the presence of the said courts, or so near thereto as to obstruct the administration of justice, the misbehaviour of any of the officers of the said courts in their official transactions, and the disobedience or resistance by any officer of the said courts, party, juror, witness, or any other person or persons, to any lawful writ, process, order, rule, decree, or command of the said courts." 4 Stat. 487-8, § 1.
[4] "That all the said courts of the United States * * * shall have power to impose and administer all necessary oaths or affirmations, and to punish by fine or imprisonment, at the discretion of said courts, all contempts of authority in any cause or hearing before the same." 1 Stat. 83, § 17.
[5] "That if any person or persons shall, corruptly, or by threats of force, endeavour to influence, intimidate, or impede any juror, witness, or officer, in any court of the United States, in the discharge of his duty, or shall, corruptly, or by threats or force, obstruct, or impede, or endeavour to obstruct or impede, the due administration of justice therein, every person or persons, so offending, shall be liable to prosecution therefor, by indictment, and shall, on conviction thereof, be punished, by fine not exceeding five hundred dollars, or by imprisonment, not exceeding three months, or both, according to the nature and aggravation of the offence." 4 Stat. 488. Compare 18 U.S.C.A. § 241.
[6] Particularly the impeachment and acquittal of Judge James H. Peck. This incident is often discussed in the contempt cases. ·For a recent discussion, see Nye v. United States, 61 S.Ct. 810, 85 L.Ed. 1172, decided April 14, 1941.

about the Act of 1831, it is reasonable to believe that Congress meant that the courts should have a contempt power less broad than they possessed under the Act of 1789.

To learn how much less, it is natural to turn to the cases. We find that Section 1 of the Act of 1831 has had varying constructions and varying interpretations of those constructions. [7] It is probably correct to say that throughout the remainder of the nineteenth century the provision received a continually broadening construction. In 1905 this court clearly held that the attempt to influence a juror no matter where fell within the Section. [8] In 1911 this court reaffirmed that conclusion. [9] There can be no doubt that the Supreme Court's "reasonable tendency" (to obstruct the administration of justice) test enunciated in the Toledo Newspaper [10] case (1918) included all attempts to influence jurors wherever they were. And to our minds, at least twice [11] since then, the Supreme Court construed the Section in such manner as would make the acts of the present appellant subject to contempt proceedings.

Under this state of the law, [12] appellant, after pleading guilty, was convicted of criminal contempt. On April 14th of this year the Supreme Court, in the Nye [13] case, said that the words "so near thereto" must be given a geographical not a causal construction. In reaching this conclusion the Court expressly overruled its Toledo de-

cision. We believe that appellee has properly conceded that if appellant's wrongful acts had occurred on April 15, 1941, the court should conclude that it had no power to punish him in criminal contempt proceedings. This is particularly true in light of the emphasis in the Nye opinion placed on Section 2 of the Act of 1831 in construing Section 1. Section 2 makes the endeavor to influence jurors, the wrongful acts here, liable to punishment after indictment. [14]

Is one entitled to a discharge under a writ of habeas corpus where the court had power under the statutory construction to punish his acts in a criminal contempt proceeding at the time the acts were done and the sentence imposed, the court not having such power under a new statutory construction at the time the writ of habeas corpus was filed? That is the question in this case. And so far as we have been able to ascertain it is a question of first impression.

This is a habeas corpus proceeding, a collateral attack upon a previous judgment of the District Court, accepted at the time as final. It is increasingly evident that "jurisdiction" in the normal case is not subject to collateral attack. [15] While habeas corpus is regarded more liberally than most forms of collateral attack, it is not to be used as an appeal or a writ of error. [16] We believe that appellant would be entitled to discharge under the writ, if the

[7] See cases cited and discussed in the majority and dissenting opinions of Nye v. United States, 61 S.Ct. 810, 85 L.Ed. 1172, decided April 14, 1941.

[8] McCaully v. United States, 25 App. D.C. 404.

[9] Pierce v. United States, 37 App.D.C. 582.

[10] Toledo Newspaper Co. v. United States, 247 U.S. 402, 38 S.Ct. 560, 62 L. Ed. 1186.

[11] Craig v. Hecht, 263 U.S. 255, 44 S. Ct. 103, 68 L.Ed. 293; Sinclair v. United States, 279 U.S. 749, 49 S.Ct. 471, 73 L.Ed. 938, 63 A.L.R. 1258. "The reasonable tendency of the acts done is the proper criterion," 279 U.S. at page 764, 49 S.Ct. at page 476, 73 L.Ed. 938, 63 A. L.R. 1258.

[12] "It is universally recognized that any act by which jurors are tampered with, whether by bribery, association, or other methods, constitutes a contempt, punishable by the court in summary proceedings." 63 A.L.R. 1269, 1270.

[13] Nye v. United States, 61 S.Ct. 810, 85 L.Ed. 1172, decided April 14, 1941.

[14] See Footnote 5, compare footnote 3.

[15] American Surety Co. v. Baldwin, 287 U.S. 156, 53 S.Ct. 98, 77 L.Ed. 231, 86 A.L.R. 298; Stoll v. Gottlieb, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104; Chicot County Drainage District v. Baxter State Bank, 308 U.S. 371, 60 S.Ct. 317, 84 L. Ed. 329; Sunshine Anthracite Coal Co. v. Adkins, 310 U.S. 381, 60 S.Ct. 907, 84 L.Ed. 1263; Jackson v. Irving Trust Co., 311 U.S. 494, 61 S.Ct. 326, 85 L. Ed. 297; Boskey and Braucher, Jurisdiction and Collateral Attack: October Term, 1939 (1940) 40 Col.L.Rev. 1006; (1940) 49 Yale L.J. 959; (1940) 53 Harv. L.Rev. 652. But see Kalb v. Feuerstein, 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370, and United States v. United States Fidelity & Guaranty Co., 309 U.S. 506, 60 S.Ct. 653, 84 L.Ed. 894.

[16] Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461; United States v. Jaeger, 2 Cir., 117 F.2d 483. Compare

District Court clearly did not have power to act.[17] If there was doubt about the Court's power, a direct appeal would usually be the proper means of questioning the conclusion; extraordinary circumstances might justify the issuance of the writ.[18] If the court had the power, appellant is not entitled to discharge.[19]

Thus the question in this case becomes whether the Nye case (1941) with its geographical construction of the statutory words took away the District Court's power to adjudge one guilty of contempt for these acts as of 1939, when in that year the Court had the power under the "reasonable tendency" construction.

When a case is decided it is expected that people will make their behavior conform to the rule it lays down and also to the principle expressed in so far as it can be determined. This is true whether the decision is regarded as "the law", "the best evidence of the law", or "a prediction of what the court will do next time". When hard cases arise under the principle, counter principles are emphasized, distinctions pointed out, and the determination of what is significant may become easier or more difficult. If, at last, the first decision is overruled, then there is new law, better evidence, or an enlightened basis for prediction. Those transactions which occurred between the two decisions, are, for the most part, accepted history. This is true even though a person had presented, in proper fashion, his case to the courts. His rights being finally determined, an attempt to reopen the question, in view of the new enlightenment, would be greeted with the powerful answer of res judicata. In one respect the new law is applied to an old set of facts. Traditionally, he who questioned the law or the best evidence of it is given the benefit of the new law or the better evidence of it. This is not always the case. There has arisen, for example, when contract rights or property rights growing out of contracts are involved, the exception that the one who argued against the established law is not given the benefit of the change he helped bring about inasmuch as his adversary relied upon the previous law.[20] Such decisions apply the old law to the case at hand while establishing new law for the future. The Supreme Court has found no constitutional limitation on state courts proceeding in this manner.[21] Federal courts have proceeded similarly.[22] Obviously courts are free to follow the more traditional method.[23]

Now if a legislature makes some law, again it is expected that people will conform to its provisions. If a court later construes the Act, it is expected, likewise, that behavior will be adjusted compatibly with the decision even though the court says that the statute means something other than what most people thought that it meant. There would be uncertainty and criticism if each person proceeded to conduct himself according to his own notion of what the statute meant in face of what the court had said. If later the court reverses its construction, a new angle of thought is often injected. There are those who reason that this is different from overruling a common law case.[24] After all, the statute always was the law. It is on a higher plane than the judicial construction of it. Since the two constructions are inconsist-

Hunter v. United States, 48 App.D.C. 19.

[17] In re Snow, 120 U.S. 274, 7 S.Ct. 556, 30 L.Ed. 658; Ex parte Fisk, 113 U.S. 713, 5 S.Ct. 724, 28 L.Ed. 1117; Elliott v. United States, 23 App.D.C. 456. Compare Ex parte Cuddy, 131 U.S. 280, 9 S.Ct. 703, 33 L.Ed. 154. Contrast United States v. Jaeger, 2 Cir., 117 F.2d 483.

[18] Bowen v. Johnston, 306 U.S. 19, 59 S.Ct. 442, 83 L.Ed. 455; Boskey and Braucher, Jurisdiction and Collateral Attack: October Term, 1939 (1940) 40 Col. L.Rev. 1006, 1028-9.

[19] Sanford v. Robbins, 5 Cir., 115 F.2d 435.

[20] 14 Am.Jur., Courts, § 130. Snyder, Retrospective Operation of Overruling Decisions (1940) 35 Ill.L.Rev. 121, 130 et seq.

[21] Great Northern R. Co. v. Sunburst Oil & Refining Co., 287 U.S. 358, 364, 53 S.Ct. 145, 77 L.Ed. 360, 85 A.L.R. 254.

[22] Gelpcke v. City of Dubuque, 68 U.S. 175, 17 L.Ed. 520; Taylor v. Ypsilanti, 105 U.S. 60, 26 L.Ed. 1008. Compare Montana Nat. Bank v. Yellowstone County, 276 U.S. 499, 48 S.Ct. 331, 72 L.Ed. 673.

[23] Great Northern R. Co. v. Sunburst Oil & Refining Co., 287 U.S. 358, 365, 53 S.Ct. 145, 77 L.Ed. 360, 85 A.L.R. 254.

[24] Snyder, Retrospective Operation of Overruling Decisions (1940) 35 Ill.L.Rev. 121, 134. Contrast Great Northern R. Co. v. Sunburst Oil & Refining Co., 287 U.S. 358, 365, 53 S.Ct. 145, 77 L.Ed. 360, 85 A.L.R. 254.

ent, to be practical, the latter must be chosen as right and the former never was the law. That means that just about everybody was fooled. This reasoning would seem to be more in accordance with the traditional thought habit of the civil law than of the common law although both always tend to modify themselves toward each other. But courts have often concluded that to apply the new construction to a previous transaction would be unjust.[25]

If instead of a court changing the construction of a statute, the legislature passes a new act which in effect repeals the old one, there would be little doubt that the old act was the law until the new one was enacted. For example if the contempt statute of 1789 had still been in effect in 1939 when appellant was sentenced, and then on April 14, 1941, a new act of Congress had become effective which limited the court's power to breaches committed within the court house, probably no one upon second thought would have decided that appellant was entitled to discharge upon a writ of habeas corpus.

We have mentioned three types of alterations in the law: a court's overruling decision in the realm of common law, a court changing its construction of a statute, and the enacting of a new statute which partially or totally repeals an old act. In an attempt to complete the picture we point out a fourth situation and compare it with the instant problem.

It has been commonly thought that if an act is declared unconstitutional, it never had any force or effect. Yet a realistic approach is eroding this doctrine. In the instant case the reason why it is considered that appellant may be entitled to discharge is because the statute never gave the court contempt "jurisdiction" over his type of offense. Yet the courts had said there was jurisdiction. It is now said that there is no jurisdiction. But to say that there never was jurisdiction is to place the Nye case on a higher plane than, for example, the Toledo decision. True the Nye case is the law now and will be followed until changed. But the Supreme Court's construction had been otherwise. Those decisions that made it otherwise were on the same plane as the Nye case. All of the decisions were construing the statute. When a statute is declared unconstitutional it falls because it must yield to the basic, superior law. There is much more reason to argue that the unconstitutional statute never was the law. Yet today even such a statute is an operative fact and decisions made under its color have the blessing of res judicata.[26]

All of the loose ends presented in this discussion on the effect of altering the law can be pretty well tied together when it is realized that law is not a pure science, that law loses its vital meaning if it is not correlated to the organic society in which it lives, that law is a present and prospective force, that law needs some stability of administration, that the law is all the law there is, that law is more for the parties than for the courts, that people will rely upon and adjust their behavior in accordance with all the law be it legislative or judicial or both.

These considerations should guide the lawmakers and the lawappliers in making their determinations in respect of whether a change in the law is to be effective only for the future or also for the past, and if the latter, to what extent.[27] And these

---

[25] State v. O'Neil, 147 Iowa 513, 126 N.W. 454, 33 L.R.A.,N.S., 788, Ann.Cas. 1912B, 691. See the case in which the Iowa Court changed its view, McCollum v. McConaughy, 141 Iowa 172, 119 N.W. 539. The new view was applied to the case at hand inasmuch as the defendant had acquired no property rights; the action was in equity to enjoin.

State v. Longino, 109 Miss. 125, 67 So. 902, Ann.Cas.1916E, 371. See the case that changed the law, State v. Rawles, 103 Miss. 806, 60 So. 782.

State v. Bell, 136 N.C. 674, 49 S.E. 163. Compare change in construction of constitutional provision, Payne v. City of Covington, 276 Ky. 380, 123 S.W.2d 1045, 122 A.L.R. 321.

These cases apply the principle that all the law, the statute plus the judicial construction, in effect at the time of the transaction is critical. Freeman, The Protection Afforded Against the Retroactive Operation of an Overruling Decision (1918) 18 Col.L.Rev. 230.

Compare, United States v. Moser, 266 U.S. 236, 45 S.Ct. 66, 69 L.Ed. 262.

[26] Chicot County Drainage District v. Baxter State Bank, 308 U.S. 371, 60 S. Ct. 317, 84 L.Ed. 329.

[27] Snyder, Retrospective Operation of Overruling Decisions (1940) 35 Ill.L.Rev. 121; Freeman, The Protection Afforded Against the Retroactive Operation of an Overruling Decision (1918) 18 Col.L.Rev. 230; (1933) 42 Yale L.J. 779; (1938) 25 Va.L.Rev. 210. Compare 89 A.L.R. 1514 et seq.; but see, United States v. Hill,

considerations should be applicable to both sides of a potential litigation, civil or criminal, so that we may have our rules of the game as we go. The Supreme Court in the Nye case applied its new law to the litigation then before it. Inasmuch as personal liberty was involved and the courts usually apply law this much after the fact, such a result was meritorious. But the Court did not indicate whether its new law was to be applied to cases decided under the old law previous to its decision. That question is now for us, another court.

We believe that appellant is not entitled to discharge upon the habeas corpus writ. The District Court had the power to sentence him in a criminal contempt proceeding in 1939. The Nye case of 1941 should not be applied so as to sweep away that power as of 1939. This collateral attack, then, is unavailing. We reject the idea that if a court was considered to have the power in 1939 to do a certain thing under existing statutory construction, and in 1941 that construction is changed so that it no longer has the power to do that thing, it should be concluded that it never had the power in 1939. It has often been said that the living should not be governed by the dead, for that would be to close our eyes to the changing conditions which time imposes. It seems even sounder to say that the living should not be governed by their posterity, for that, in turn, would be downright chaotic.

Affirmed.

---

3 Cir., 70 F.2d 1006, certiorari denied 292 U.S. 634, 54 S.Ct. 719, 78 L.Ed. 1487; Compare Hosier v. Aderhold, 5 Cir., 71 F.2d 422 and Rives v. O'Hearne, 64 App.D.C. 48, 73 F.2d 984; Ellerbee v. Aderhold, D.C.N.D.Ga., 5 F.Supp. 1022.