**Kincaid WILSON, Petitioner,**

**v.**

**STATE OF NORTH CAROLINA, D. P. Henry, Administrator, Respondents.**

**Civ. No. 2216.**

United States District Court,
E. D. North Carolina,
Raleigh Division.

Feb. 27, 1969.

Kincaid Wilson, pro se.

Robert Morgan, Atty. Gen. of North Carolina, by Jacob L. Safron, Staff Atty., Raleigh, N. C., for respondents.

## OPINION and ORDER

LARKINS, District Judge.

This cause comes before the Court upon an application for a writ of habeas corpus filed by a state prisoner pursuant to the provisions of Title 28 U.S.C.A. Sec. 2254. Issues were joined by the respondents' Answer to Petition and Motion to Dismiss.

Petitioner, Kincaid Wilson, having been indicted on two charges of first degree burglary and one charge of rape, was convicted upon his plea of guilty to those criminal offenses at the August Term, 1963, of the Superior Court of Wayne County, North Carolina, and was sentenced to imprisonment in the State's Prison for the term of his natural life. He is presently incarcerated at North Carolina Central Prison, Raleigh, North Carolina, as a result of that sentence.

Petitioner alleges that his detention is violative of rights guaranteed him by the Constitution and laws of the United States. Specifically, he asserts a denial of those rights by the State of North Carolina in each of the following particulars:

(1) that he was arrested upon an invalid warrant;

(2) that the evidence was not sufficient to support the conviction of two charges of first degree burglary and one charge of rape; and

(3) that the plea of guilty upon which his conviction was based was not freely, voluntarily, and understandingly made.

Respondents, answering, deny the allegations, assert that petitioner is properly confined, and move to dismiss the petition.

## FINDINGS OF FACT

The petitioner, Kincaid Wilson, was charged in a warrant issued by R. P. Yelverton, Justice of the Peace of Goldsboro Township in Wayne County, North Carolina, upon the affidavit of James Sasser, with the rape of Marylen Dorsett on November 20, 1962. The warrant was issued on July 6, 1963, and served upon the petitioner on July 29, 1963. A preliminary hearing was held, probable cause was found, and the petitioner was bound over to the August Term, 1963, of the Wayne County Superior Court. The Grand Jury at said term of court indicted petitioner on two charges of the capital offense of first degree burglary and one charge of the capital crime of rape. At arraignment, August 7, 1963, petitioner, by and through his court-appointed counsel, entered a plea of not guilty. On August 12, 1963, petitioner, through court-appointed counsel, pleaded guilty to the charges contained in said indictments. Petitioner executed an affidavit, sworn to before the Clerk of the Wayne County Superior Court, in which he authorized his attorney to enter the plea of guilty and in which he had been advised that he would receive a life sentence. Petitioner was sentenced to life imprisonment upon said plea to the indictment charging first degree burglary and rape, and to life imprisonment, to commence at the expiration of the sentence imposed in the indictment for rape and first degree burglary, in the indictment charging first degree burglary. No appeal was taken to the North Carolina Supreme Court.

Petitioner's subsequent application for a writ of habeas corpus, dated February 27, 1965, was treated as a petition for a post-conviction hearing. A plenary hearing was held at the August, 1965, Term of the Wayne County Superior Court. The hearing was continued until November, 1965, in order that the court-appointed attorney at the original trial could testify. By Order dated November 12, 1965, the Honorable Howard H. Hubbard, Judge Presiding, held that the indictment charging first degree burglary was defective and failed to charge a crime and therefore, the sentence imposed to commence at the expiration of the life sentence imposed on the indictment of first degree burglary and rape was void and set aside said sentence. In regard to the trial itself and the other indictment, the petitioner was denied relief.

Petitioner's court-appointed counsel filed an application for a Writ of Certiorari to the North Carolina Supreme Court which was denied by the Court on February 8, 1966.

Subsequent petitions for post-conviction relief were denied on January 20, 1967, and on August 16, 1968.

## CONCLUSIONS OF LAW

■ Thus, petitioner's contentions that the evidence is not sufficient to support the conviction of first degree burglary and rape, and that the plea of guilty was not freely, voluntarily, and understandingly made, may be considered by this Court, petitioner having exhausted the remedies available in the courts of the state. 28 U.S.C.A. Sec. 2254; Ex parte Hawk, 321 U.S. 114, 64 S.Ct. 448, 88 L.Ed. 572 (1944). Assuming, arguendo, that petitioner has exhausted his available state remedies in regard to his contention that he was arrested upon an invalid warrant, the record affirmatively shows that the warrant was issued properly. The warrant was issued by a justice of the peace,[1] upon an affidavit by James Sasser,[2] and such warrant recited the accusation and commanded the officer to bring the accused before the magistrate.[3] Petitioner contends that the warrant was signed by a police officer and therefore invalid. State v. Mc-

Gowan, 243 N.C. 431, 90 S.E.2d 703 (1956). The *McGowan* case refers to those warrants signed only by a police officer and not a judicial officer as required by Section 15–18 of the North Carolina General Statutes. Here, the warrant was signed by the proper judicial officer. Therefore, the petitioner's contention that he was arrested upon an invalid warrant is totally without merit.

■ Petitioner next contends that the evidence was not sufficient to support his conviction. It is well established that admissibility of evidence, sufficiency of evidence, and instructions to the jury are matters of state law and procedure not involving constitutional issues, and it is only in circumstances impugning fundamental fairness or infringing upon specific constitutionally protected rights that a federal question is presented. The case at bar does not present such an issue. The role of a federal habeas corpus petition is not to serve as an additional appeal. Grundler v. State of North Carolina, 283 F.2d 798 (4th Cir., 1960).

Petitioner contends that his plea of guilty upon which his conviction was based was not freely, voluntarily, and understandingly made. He states that he pleaded guilty only upon the assurance of his counsel that he would get a lighter sentence and because of his fear that

1. North Carolina General Statutes, § 15–18.

"The following persons respectively have power to issue process for the apprehension of persons charged with any offense, and to execute the powers and duties conferred in this chapter, namely: The Chief Justice and the associate justices of the Supreme Court, the judges of the superior court, judges of criminal courts, presiding officers of inferior courts, *justices of the peace*, mayors of cities, or other chief officers of incorporated towns."

2. North Carolina General Statutes, § 15–19.

"Whenever complaint is made to any such magistrate that a criminal offense has been committed within this State, or without this State and within the United States, and that a person

charged therewith is in this State, it shall be the duty of such magistrate to examine on oath the complainant and any witnesses who may be produced by him."

3. North Carolina General Statutes, § 15–20.

"If it shall appear from such examination that any criminal offense has been committed, the magistrate shall issue a proper warrant under his hand, with or without seal, reciting the accusation, and commanding the officer to whom it is directed forthwith to take the person accused of having committed the offense, and bring him before a magistrate, to be dealt with according to law. A justice of the peace or a chief officer of a city or town shall direct his warrant to the sheriff or other lawful officer of his county."

certain Civil Rights demonstrations would prejudice his case. The voluntariness of his plea and other elements of the trial were reviewed by the State in a post-conviction hearing at the August 9, 1965, Term of the Superior Court of Wayne County. This post-conviction hearing is not under attack by the petitioner. The following affidavit was introduced at the hearing:

"NORTH CAROLINA, WAYNE COUNTY    IN THE SUPERIOR COURT

AFFIDAVIT

Docket No. 7522, Docket No. 7523, Docket No. 7523–a

STATE OF NORTH CAROLINA

v.

KINCAID WILSON, defendant.

Kincaid Wilson, being first duly sworn, deposes and says that he does now hereby authorize, empower and direct his Attorney, Cecil G. Best, to enter a plea of guilty to the Bill of Indictment charging him with first degree burglary in Docket No. 7522, and a plea of guilty to the Bill of Indictment charging him with rape in Docket No. 7523, and a plea of guilty to the Bill of Indictment charging him with first degree burglary in Docket No. 7523–a.

This affiant further states that his attorney, Cecil G. Best, has fully advised him that by pleading guilty to the two Bills of Indictment to first degree burglary and the Bill of Indictment charging him with rape that he will receive a life sentence by the Court in each case.

(Signed)  Kenny Kaye Wilson
Affiant

Sworn and subscribed to before me this the 12th day of August, 1963.

(Signed)  C. L. Derr, Clerk Superior Court of Wayne County, North Carolina."

(Tr. 8, 9)

———◆———

Petitioner then testified that he was told he would get the gas chamber if he didn't sign the affidavit, and that he was also told that people were "out to get the colored people they were demonstrating at the Paramount Theatre. I knew then there wasn't any chance for me whatsoever." (Tr. 10). The hearing was then continued until November 8, 1965, at which time court-appointed counsel at the original trial, Cecil G. Best, was present. Mr. Best testified that he had been practicing law since 1918, and that he handled at least "seventy-five or eighty cases (criminal) a year." (Tr. 2). After petitioner consented to the waiver of the attorney-client privilege, Mr. Best's testimony indicates that the petitioner advised him of his intentions to plead guilty. Mr. Best's reply was " * * * You say you are innocent, I won't plead you guilty. I never have and I never expect to." (Tr. 5). Mr. Best denies that he ever told petitioner that he would go to the gas chamber if he didn't enter a guilty plea, and he denies that he ever suggested the possibility of racial prejudice at the trial. (Tr. 7–8).

By Order dated November 12, 1965, in the Superior Court of Wayne County, the Honorable Howard H. Hubbard, Judge Presiding, vacated the life sentence, to commence at the expiration of the sentence imposed in the indictment for rape and first degree burglary, in the indictment charging first degree burglary, and found no creditable evi-

dence to support the contention that his counsel told him he would be sent to the gas chamber if he didn't plead guilty because there were a lot of whites that didn't like the nature of the case. No such statement was made to the petitioner by his counsel Mr. Best. This state court factual determination is fairly supported by the record as a whole. This situation is one in which this Court is free to accept the facts as found by the State court in a full and fair hearing resulting in reliable findings. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). It is the opinion of this Court that the findings in Wilson's post-conviction proceedings are reliable. They are adopted in toto.

Petitioner's position seems to be that regardless of what he had actually done, the fact that he entered a plea of guilty to the charges of rape and first degree burglary because he was afraid of being subjected to a greater penalty, the gas chamber, rendered the plea involuntary. It affirmatively appears from the record that when life imprisonment was mentioned to the petitioner it was only a restatement of North Carolina law,[4] not an inducement for petitioner to forego his constitutional right to trial by jury.

However, the case at bar falls under the doctrine enunciated in Alford v. State of North Carolina, 405 F.2d 340 (4th Cir., 1968). "A prisoner is entitled to relief if he can demonstrate that his plea was a product of those burdens—specifically, that his principal motivation to plead guilty or to forego trial by jury was to avoid the death penalty." Alford v. State of North Carolina, *supra*, 347. Here, although petitioner voluntarily confessed his guilt, the protection afforded by the North Carolina statutory scheme, i.e. life imprisonment instead of the possibility of the death penalty, was the principal motivation.

Petitioner did not appeal his original conviction, and, after his post-conviction hearing, his application for a Writ of Certiorari was denied by the North Carolina Supreme Court on February 8, 1966. Thus, the ordinary methods of review in North Carolina are exhausted as of that date, almost two years prior to the *Alford* decision. The question at bar is whether the *Alford* decision is to be given retroactive operation.

The Constitution neither prohibits nor requires retrospective effect. Linkletter v. Walker, 381 U.S. 618, 629, 85 S.Ct. 1731, 1738, 14 L.Ed.2d 601, 608 (1965). "Once the premise is accepted that we are neither required to apply, nor prohibited from applying, a decision retrospectively, we must then weigh the merits and demerits in each case by looking to prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." Linkletter v. Walker, *supra*. Here, the introduction of pleas of guilty do not enhance the reliability of the fact-finding process of the trial because after the plea evidence is introduced and a determination is made as to the sufficiency of such to support the conviction. The fact that such a rule, now overruled, affected the "very integrity of the fact-finding process and averted the clear danger of convicting the innocent" has resulted in the retroactive application of Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, 93 A.L.R.2d 733 (1963), and Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, 1 A.L.R.3d 1205 (1964). Johnson v. New Jersey, 384 U.S. 719, 728, 86 S.Ct. 1772, 16 L.Ed.2d 882, 889 (1966). Here, the inquiry is not into the question of guilt or innocence (that is determined at the trial regardless of the plea) but into the coercion attendant to such a plea of guilty in North Carolina.

Another factor in the determination of the retroactive operation of a decision is the "effect on the administration of jus-

4. North Carolina General Statutes, Sec. 15–162.1(a), (b), (1965). An accused who pleads guilty to one of the four capital crimes is to be sentenced to life imprisonment.

tice." Tehan v. U. S. ex rel. Shott, 382 U.S. 406, 418, 86 S.Ct. 459, 466, 15 L.Ed. 2d 453, 461 (1966). In the *Tehan* case, Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), was not given retroactive operation because to "require all those States now to void the conviction of every person who did not testify at his trial would have an impact upon the administration of their criminal law so devastating as to need no elaboration." Tehan v. U. S. ex rel. Shott, *supra*, 382 U.S. 406, 419, 86 S.Ct. 459, 467. Since far more persons plead guilty than go to trial, the retroactive operation of *Alford* would be even more devastating.

After full consideration of all the factors, this Court is not able to say that the rule in Alford v. State of North Carolina, *supra*, requires retroactive operation. This Court rejects the idea that if a statute was in force in 1963, and in 1968 its construction is changed so that it is no longer in force, it should be concluded that it was never in force. Quoting Justice Vinson in Warring v. Colpoys, 74 App.D.C. 303, 122 F.2d 642, 647, certiorari denied 314 U.S. 678, 62 S.Ct. 184, 86 L.Ed. 543, "It has often been said that the living should not be governed by the dead, for it would be to close our eyes to the changing conditions which time imposes. It seems even sounder to say that the living should not be governed by their posterity, for that, in turn, would be down right chaotic." Accordingly, the *Alford* rule shall only be applicable to those criminal actions commencing after November 26, 1968.

### ORDER

Now therefore, in accordance with the foregoing, it is:

Ordered that the application for a writ of habeas corpus be, and the same is hereby denied;

Further ordered that the respondent's Motion to Dismiss be, and the same is hereby allowed;

Let this order be entered forthwith.