**Edward Lyle OSTWALD, Appellant (Defendant below),**

**v.**

**STATE of Wyoming, Appellee (Plaintiff below).**

**Edward Lyle OSTWALD, Petitioner,**

**v.**

**Lenard MEACHAM, Warden, Wyoming State Penitentiary, Respondent.**

**Nos. 4374, 4467.**

Supreme Court of Wyoming.

July 21, 1975.

John M. Daly and Michael A. Maycock, of Burke, Daly & Maycock, Gillette, for appellant and petitioner.

David B. Kennedy, Atty. Gen.,* V. Frank Mendicino, Atty. Gen.,** H. J. Arnieri, Asst. Atty. Gen., Cheyenne, and Daniel J. Morgan, County and Pros. Atty., Campbell County, Gillette, for appellee and respondent.

Before GUTHRIE, C. J., and McCLINTOCK, RAPER, THOMAS and ROSE, JJ.

RAPER, Justice.

This court in *State v. Stern,* Wyo. 1974, 526 P.2d 344, held § 6–130, W.S.1957, 1973 Cum.Supp.,[1] a misdemeanor, unconstitutional. The single question of whether or not the decision was applicable prospectively or retroactively, is now raised. The defendant-appellant seeks post-conviction relief from the judgment and sentence of the district court, dated March 29, 1973, by which he was committed to the Wyoming State Penitentiary on the original version of § 6–130,[2] a felony, for a period of not less than five nor more than eight years for breaking and entering a locked and sealed building, to which charge he entered a plea of guilty. The defendant-appellant in the post-conviction proceeding has in addition as a petitioner filed directly in this court an application for writ of habeas corpus. The two matters have been consolidated because together they raise the same issue, namely, is he unlawfully confined because of his conviction under a statute subsequently held or determined to be unconstitutional?[3]

While this court has original jurisdiction to entertain applications for writs of habeas corpus pursuant to Article V, § 3, Wyo. Const.,[4] it does not do so unless a

---

* Term expired prior to oral argument.

** Appointed Attorney General, effective April 1, 1975.

1. "Whoever, at any time, unlawfully breaks and enters, or attempts to unlawfully break and enter, into any locked or sealed dwelling house, office, storehouse, warehouse, church, meeting house, or building used for the purpose of religious worship, car factory, tool house, freight house, station house, depot, railroad car, cave or cavern, courthouse or other public building, or other building whatsoever, is guilty of a misdemeanor, and shall be imprisoned in the county jail not more than one year or [fined] a fine of not more than $500 or both." [Enacted by Session Laws, 1973, Ch. 143, § 1.]

2. "Whoever, at any time, unlawfully breaks and enters, or attempts to unlawfully break and enter, into any locked or sealed dwelling house, office, storehouse, warehouse, church, meeting house, or building used for the purpose of religious worship, car factory, tool house, freight house, station house, depot, railroad car, court house or other public building, or other building whatsoever, is guilty of a felony, and shall be imprisoned in the penitentiary not more than fourteen (14) years." [Before amended by Session Laws, 1973, Ch. 143, § 1.]

3. We could write a book-size opinion on this problem, analyzing, comparing, probing, investigating and citing from the mountain-size heap of paper that has been piled up by the courts and scholars. We consider that *Linkletter,* infra, has done the sorting out, so this opinion will be held to minimum proportions. For those interested, a list of references appears in *People v. Fields,* 1974, 391 Mich. 206, 216 N.W.2d 51, footnote 2, which incidentally holds that a decision invalidating a statute providing waiver of probate court jurisdiction over certain juveniles charged with crimes would be given retroactive effect only as to cases pending prior to adoption of a new statute and in which issue of waiver was raised and properly preserved on appeal. There is a comprehensive annotation in 10 A.L.R.3d 1371 covering Prospective or Retroactive Operation of Overruling Decision. We voice no new thoughts but only those left after the chaff has been blown away by the winds of reasoning and debate over an extended time.

4. "The supreme court shall have original jurisdiction in quo warranto and mandamus as to all state officers, and in habeas corpus. The supreme court shall also have power to issue writs of mandamus, review, prohibition, habeas corpus, certiorari, and other writs necessary and proper to the complete exercise of its appellate and revisory jurisdiction. Each of the judges shall have power to issue writs of habeas corpus to any part of the state upon petition by or on behalf of a person held in actual custody, and may make such writs returnable before himself or before the supreme court, or before any district court of the state or any judge thereof."

showing is made of circumstances which render it necessary or proper that the writ if granted should issue originally from this court. Rule 16, Rules of the Supreme Court of Wyoming.[5] Such a showing has been made in that the case will resolve the question of the retroactive or prospective effect of this court's holding § 6–130, W. S.1957, 1973 Cum.Supp., unconstitutional. The decision will involve the status of a number of prisoners convicted and presently serving sentences as convicts under that section and could have other far-reaching effects on others as will be developed later in this opinion. To save delay and the possibility of a multiplicity of suits by way of habeas corpus actions and post-conviction proceedings as well as coram nobis which could result in a conflict of rulings in the several judicial districts of the state, we deem it of public interest to take jurisdiction for prompt and uniform application and disposition of the question as it may arise in the future and to settle the concern of those immediately affected.

The post-conviction proceeding raised a question which has become moot [6] and upon the suggestion of appellant-defendant, the appeal should be dismissed for that reason, but the appeal record can be used to assist in touching a question of landmark proportions.

Without discussion, for the same reasons cited in *Stern*, the original § 6–130 is unconstitutional and we deem it declared so in that case, the change in penalty being miniscule. This is admitted by the State.

The attorney general reports that on the recent date of filing one of its briefs herein there were eight men incarcerated in the Wyoming State Penitentiary for breaking and entering, one being held for breaking and entering and burglary, three for breaking and entering and grand larceny, one being held for breaking and entering and as a result of probation violation arising out of the judgment and sentence, one for breaking and entering, jail breaking, joyriding and as a result of probation violation arising out of the judgment and sentence, and another for breaking and entering, burglary, grand larceny and as a result of probation violation arising out of the sentence. Whatever this court does in this case is of immediate interest to those presently held on similar charges.

The Supreme Court of the United States has said on various occasions that a statute declared unconstitutional was no law and that no rights or duties could flow from such an enactment. As an example, it was

5. "In any application made to the court for a writ of habeas corpus, mandamus, quo warranto, or for any prerogative writ to be issued in the exercise of its original jurisdiction and for which an application might have been lawfully made to some other court in the first instance, the petition shall, in addition to the necessary matter requisite by the rules of law to support the application also set forth the circumstances which, in the opinion of the applicant, render it necessary or proper that the writ should issue originally from this court, and not from such other court, and the sufficiency or insufficiency of such circumstances so set forth in that behalf will be determined by the court in awarding or refusing the application. In case any court, justice, or other officer, or any board or other tribunal, in the discharge of duties of a public character, be named in the application as defendant, the petition shall also disclose the name or names of the real party or parties, if any, in interest,

or whose interest would be directly affected by the proceedings; and in such case it shall be the duty of the applicant obtaining an order for any such writ to serve or cause to be served upon such party or parties in interest a true copy of the petition and of the writ issued thereupon, and to file in the office of the clerk of this court evidence of such service."

6. Defendant sought reduction of his sentence to that of a misdemeanor in the light of the amendment from felony to misdemeanor. He could not have the benefit of the lessened penalty even if proper, because the amended statute was declared unconstitutional before the appeal was concluded. We rule on no question therein raised. The court file of petitioner's conviction is, however, pertinent and forms by consolidation with the habeas corpus action a full record for our consideration.

announced in *Norton v. Shelby County*, 1886, 118 U.S. 425, 6 S.Ct. 1121, 30 L.Ed. 178, 186, that:

> "* * * An unconstitutional Act is not a law; it confers no rights, it imposes no duties; it affords no protection, it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed."

It said something similar in *Ex parte Siebold*, 1880, 100 U.S. 371, 376, 25 L.Ed. 717, 719,[7] when it profoundly announced:

> "* * * An unconstitutional law is void, and is as no law. An offense created by it is not a crime. A conviction under it is not merely erroneous, but is illegal and void, and cannot be a legal cause of imprisonment. * * *"

The sweep of such statements is deceiving. We find in practice that unconstitutional statutes are in fact realities and past decisions made under them have substance under the doctrine of res judicata. In *Warring v. Colpoys*, 1941, 74 App.D.C. 303, 122 F.2d 642, 136 A.L.R. 1025, cert. den. 314 U.S. 678, 62 S.Ct. 184, 86 L.Ed. 543,[8] the court was confronted with the identical question that we have here:

> "Is one entitled to a discharge under a writ of habeas corpus where the court had power under the statutory construction to punish his acts in a criminal contempt proceeding at the time the acts were done and the sentence imposed, the court not having such power under a new statutory construction at the time the writ of habeas corpus was filed? * * *"

The court, speaking through Justice Vinson, later a justice of the United States Supreme Court, said:

> "It has been commonly thought that if an act is declared unconstitutional, it never had any force or effect. Yet a realistic approach is eroding this doctrine. In the instant case the reason why it is considered that appellant may be entitled to discharge is because the statute never gave the court contempt 'jurisdiction' over his type of offense. * * * When a statute is declared unconstitutional it falls because it must yield to the basic, superior law. There is much more reason to argue that the unconstitutional statute never was the law. Yet today even such a statute is an operative fact and decisions made under its color have the blessing of res judicata.

> "All of the loose ends presented in this discussion on the effect of altering the law can be pretty well tied together when it is realized that law is not a pure science, that law loses its vital meaning if it is not correlated to the organic society in which it lives, that law is a present and prospective force, that law needs some stability of administration, that the law is all the law there is, that law is more for the parties than for the courts, that people will rely upon and adjust their behavior in accordance with

7. The court made this broad statement to justify its jurisdiction to examine the constitutionality of an Act of Congress on an application for writ of habeas corpus. It found the Act constitutional and denied the writ. The case did not examine nor even involve the problem of retroactivity.

8. In Shepardizing this case, we found a galaxy of jurisdictions accepting it with wide approval one way and another. In *Sunal v. Large*, 1947, 332 U.S. 174, 182, 67 S.Ct. 1588, 1593, 91 L.Ed. 1982, 1989, reh. den. 332 U.S. 785, 68 S.Ct. 29, 92 L.Ed. 368, and 333 U.S. 877, 68 S.Ct. 895, 92 L.Ed. 1153, we discover Justice Douglas citing *Warring*

with agreement for the proposition that habeas corpus will not be allowed to do service for an appeal:

"* * * If defendants who accept the judgment of conviction and do not appeal can later renew their attack on the judgment by habeas corpus, litigation in these criminal cases will be interminable. Wise judicial administration of the federal courts counsels against such course, at least where the error does not trench on any constitutional rights of defendants nor involve the jurisdiction of the trial court."

As nearly as we can discover, the Supreme Court of the United States has never put down *Warring*.

all the law be it legislative or judicial or both.

\*     \*     \*     \*     \*     \*

"We believe that appellant is not entitled to discharge upon the habeas corpus writ. \* \* \*"

*Warring* is so rich in practicality, it could well be adapted as the opinion in this case.[9] But we must move on to identical views taken by the United States Supreme Court. In *Chicot County Drainage District v. Baxter State Bank*, 1940, 308 U.S. 371, 374, 60 S.Ct. 317, 318, 84 L.Ed. 329, reh. den. 309 U.S. 695, 60 S.Ct. 581, 84 L. Ed. 1035, the court had the question before them and said:

> "The courts below have proceeded on the theory that the Act of Congress, having been found to be unconstitutional, was not a law; that it was inoperative, conferring no rights and imposing no duties, and hence affording no basis for the challenged decree. [Citing *Norton*, supra, and another case.] It is quite clear, however, that such broad statements as to the effect of a determination of unconstitutionality must be taken with qualifications. The actual existence of a statute, prior to such a determination, is an operative fact and may have consequences which cannot justly be ignored. The past cannot always be erased by a new judicial declaration. \* \* \*"

Even Justice Douglas, dissenting in most cases, has acknowledged in another earlier dissent that, "An unconstitutional statute is not necessarily a nullity; it may have intermediate consequences binding on peo-

ple." *Poulos v. State of New Hampshire*, 1953, 345 U.S. 395, 422, 73 S.Ct. 760, 775, 97 L.Ed. 1105, 1122, 30 A.L.R.2d 987, 1004, reh. den. 345 U.S. 978, 73 S.Ct. 1119, 97 L.Ed. 1392. See also *Wainwright v. Stone*, 1973, 414 U.S. 21, 94 S.Ct. 190, 38 L.Ed.2d 179, in which a prisoner convicted and sentenced under a sodomy statute subsequently held void for vagueness (same as *Stern*) and expressly ruled prospective by the Florida Supreme Court, sought habeas corpus relief in the federal system. The Supreme Court in a rare per curiam decision declared:

> " \* \* \* Nor was it constitutionally compelled \* \* \* to make retroactive its new construction of the Florida statute: '[a] state in defining the limits of adherence to precedent may make a choice for itself between the principle of forward operation and that of relation backward. It may say that decisions of its highest court, though later overruled, are law none the less for intermediate transactions.' *Great Northern Railway Co. v. Sunburst Oil & Refining Co.*, 287 U.S. 358, 364, 53 S.Ct. 145, 148, 77 L.Ed. 360, 85 A.L.R. 254 (1932). \* \* \*"

*Linkletter v. Walker*, 1965, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601,[10] brought to a climax and explained the entire field of retroactivity, bringing into focus the actuality and practicality of prospective rather than retroactive application, of court decisions declaring a fundamental phase of the criminal law unconstitutional, in any sphere. It laid to rest as out of tune with the times the concept of *Norton*

---

9. Justice Vinson went on to say:
"\* \* \* The District Court had the power to sentence him in a criminal contempt proceeding in 1939. \* \* \* This collateral attack, then, is unavailing. We reject the idea that if a court was considered to have the power in 1939 to do a certain thing under existing statutory construction, and in 1941 that construction is changed so that it no longer has the power to do that thing, it should be concluded that it never had the power in 1939. It has often said that the living should not

be governed by the dead, for that would be to close our eyes to the changing conditions which time imposes. It seems even sounder to say that the living should not be governed by their posterity, for that, in turn, would be downright chaotic."

10. Mishkin, The Supreme Court, 1964 Term, Forward: The High Court, The Great Writ and the Due Process of Time and Law, 79 Harv.L.Rev. 56, comments at length on *Linkletter* in a most interesting way, reaching the same result, by an alternate route.

*v. Shelby County*, supra. It settled most matters of controversy and concluded that, with respect to reaching a determination of whether a decision should be retrospective or prospective: there is no distinction drawn between civil and criminal litigation; a ruling may be prospective only and it may apply to the *invalidity of statutes* [11] as well as to the effect of a decision overturning long-established common law rules; the constitution neither prohibits nor requires retrospective effect and the federal Constitution has no voice upon the subject; and, the accepted rule today is that in appropriate cases in the interests of justice, a court may make its decision prospective.

■■■■ There are those who would opine and argue that there is some difference between a rule of procedure, constitutionally ill, and a statute infected by the same disease. The line of demarcation is invisible. To best illustrate its insignificance, put the question to the penitentiary convict. He could care less whether he was unconstitutionally there by procedure, rule, statute, or whatever. All are equally fundamental and the same liberty is involved. No more weight can be attached to one than any other. This is recognized in *Miskimins v. Shaver*, 1899, 8 Wyo. 392, 407, 58 P. 411, 414, 49 L.R.A. 831, 836, when it said, "The supreme court of the United States,[12] in a recent case, say: 'It is difficult to see why a conviction and punishment under an unconstitutional law is more violative of a person's constitutional rights than an unconstitutional conviction under a valid law.'" This case is cited by appellant and petitioner but does not reach the issue of retroactivity with which we are concerned. It deals only with habeas corpus as available to deal with an unconstitutional procedure, in an active individual case and held that the trial court had no jurisdiction to confine for unconstitutional conduct. There is no question of the concept of res judicata involved. To use it as authority is in the same class as using *Norton* or *Siebold*. We draw a line between current convictions and those previously final. A criminal will be given the benefit and effect of a change of law while a case is on direct review but thereafter the change is subject to no set rule of retroactivity. It is an incentive to him to advocate and promote constitutional reform and keep a constitution viable and vibrant. He must have some reward for his discovery.

In *Stovall v. Denno*, 1967, 388 U.S. 293, 297, 87 S.Ct. 1967, 1970, 18 L.Ed.2d 1199, 1203, the court declared that *Linkletter v. Walker*, supra; *Tehan v. United States ex rel. Shott*, 1966, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453, reh. den. 383 U.S. 931, 86 S.Ct. 925, 15 L.Ed.2d 850; [13] *Johnson v. State of New Jersey*, 1966, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882, reh. den. 385 U.S. 890, 87 S.Ct. 12, 17 L.Ed.2d 121, all establish the principle that in criminal litigation concerning constitutional claims, " 'the Court may in the interest of justice make the rule prospective * * * where the exigencies of the situation require such an application' " and that:

" * * * The criteria guiding resolution of the question implicate (a) the purpose to be served by the new stand-

---

11. 381 U.S. 628, 85 S.Ct. 1736–1737, 14 L.Ed. 2d 607–608.

12. No citation of the case, whatever it was, appears in the opinion. See *Wainwright v. Stone*, supra, *Warring v. Colpoys*, supra, and *State v. Barquet*, note 17, infra.

13. " * * * [W]e take as our starting point Linkletter's conclusion that 'the accepted rule today is that in appropriate cases the Court may in the interest of justice make the rule prospective,' that there is 'no impediment—constitutional or philosophical—to

the use of the same rule in the constitutional area where the exigencies of the situation require such an application,' in short that 'the Constitution neither prohibits nor requires retrospective effect.' Upon that premise, resolution of the issue requires us to 'weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation.' 381 U.S., at page 628–629 [85 S.Ct. at 1737] 14 L.Ed.2d at 607, 608."

ards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards. * * *"

■ The effect and purpose of *Stern* was to conclude any further prosecutions for breaking and entering under the existing statute. As indicated in *Johnson*, supra, each constitutional determination has its own distinct function, its own background, impact on the administration of justice "and the way in which these factors combine must inevitably vary with the dictate involved." [14]

For 77 years Wyoming prosecutors depended upon this statute; no statistics are available but from the number of persons now incarcerated in the Wyoming State Penitentiary, as previously mentioned, and reconstructed back through the years, it has apparently played an active role in law enforcement, either alone or in combination with other offenses. Prosecutors and defendants, too, relied upon it, unconcerned that in the future it may bear the taint of unconstitutionality. We have no idea how many defendants may have entered pleas of guilty to breaking and entering by way of plea bargaining to avoid other charges and trial. To smoke them out of the annals of history would be a monumental task. In any event they were or are incarcerated by trustworthy evidence and means which we must assume in the absence of appeal. Another unknown is how many are on probation as a result of conviction under § 6–130; to run them down is an unreasonable burden on law enforcement. The administration of justice will be burdened by petitions in coram nobis over long-closed cases, though sentences have been served or probation ended. Important civil rights were lost as a result and both

the State and the defendants themselves relied and acted upon and anticipated that important and serious result.

We must apply considerations of common sense to temper cold logic, with justice to all segments of what we like to believe is a civilized state government. We can visualize no useful purpose that would be served in reopening the cases of all those presently incarcerated, to determine the effect of the breaking and entering in prosecutions on multiple counts or to determine whether a plea bargain must be set aside to permit a prosecution on the dismissed charge and otherwise review each case. Witnesses have disappeared; time has probably eaten away the possibilities of an effective further prosecution and the State will have been placed in a position of disadvantage by its reliance on the statute.

Another consideration, perhaps little thought of, is that if every constitutional change requires retroactive effect to every proceeding in which it could be applied, regardless of vintage, there may be a judicial hesitancy to dictate change because of the flurry of new litigation in old cases. A case must end; it cannot go on ad infinitum. A judiciary in its zeal to close cases and keep them closed may not embark upon desirable constitutional change because of the everwidening wake it leaves behind on churning up the calm. Courts are reluctant to make waves. The reopening of convictions would be endless. There is stability· and comfort in repose.

As said in *Linkletter*, "there are interests in the administration of justice and the integrity of the judicial process to consider." [15] Wyoming statutes down through the years have not been annotated to the point where a full compilation of cases involving persons who have been prosecuted under § 6–130 and their convictions affirmed one way or another by this court is pos-

---

14. 384 U.S. 719, 728, 86 S.Ct. 1772, 1778, 16 L.Ed.2d 882, 889. We do not entirely quote the court in its exact language because it was dealing with a common law rule; we blend the guidelines into our specific problem.

15. 381 U.S. at 637, 85 S.Ct. at 1742, 14 L.Ed. 2d at 613.

sible as a practical matter but we do find the following on the books: *Fullmer v. Meacham*, Wyo.1964, 387 P.2d 1007; *Whiteley v. State*, Wyo.1966, 418 P.2d 164 (this case was reversed by the Supreme Court of the United States on unrelated grounds); *Spiker v. State,* Wyo. 1967, 427 P.2d 858. It probably does not make any difference whether there were three or a dozen or a hundred, we must not fritter away the effort made in the massive judicial consideration devoted to the statute over the years.

While no Wyoming court has decided the question of the retrospective effect of a declaration of unconstitutionality, we do have quite a few cases that say that statutes are presumed to be constitutional. Examples are *National Tailoring Company v. Scott*, 1948, 65 Wyo. 64, 94, 196 P.2d 387, 400; *Taxpayers' League of Carbon County v. McPherson*, 1936, 49 Wyo. 251, 275–276, 54 P.2d 897, 906, 106 A.L.R. 767, 778. If a statute is presumed constitutional, it would seem to follow, without straining, that the statute with respect to breaking was constitutional until it was declared unconstitutional and entitled to every consideration as such.

We know that it has been or will be contended that it is not fair that Stern be discharged but no others violating the same law contaminated by unconstitutionality. The cry is heard in every case where ret-

roactivity is denied. *Stovall v. Denno*, supra, even answers that complaint:

" * * * Inequity arguably results from according the benefit of a new rule to the parties in the case in which it is announced but not to other litigants similarly situated in the trial or appellate process who have raised the same issue. But we regard the fact that the parties involved are chance beneficiaries as an insignificant cost for adherence to sound principles of decision-making."[16]

It was rather neatly summarized, in *In Re Lopez*, 1965, 62 Cal.2d 368, 42 Cal.Rptr. 188, 196, 398 P.2d 380, 388, cert. den. 384 U.S. 1016, 86 S.Ct. 1929, 16 L.Ed.2d 1038, reh. den. 385 U.S. 891, 87 S.Ct. 16, 17 L. Ed.2d 123, "We no longer subscribe to that 'splendid myth' of Blackstone that all constitutional interpretations are eternal verities that stretch backwards and forwards to infinity." [17]

After full consideration of all the factors, we are not able to say that the *Stern* decision requires retrospective application.

The appeal taken in the post-conviction proceeding is dismissed as moot. The application for writ of habeas corpus filed originally in this court is denied. All cases finally decided prior to the decision in *Stern* shall remain undisturbed. By "finally decided," we refer to those cases where the judgment of conviction was rendered and the availability of appeal exhausted.

16. 388 U.S. 301, 87 S.Ct. 1972, 18 L.Ed.2d 1206.

17. We realize that some judges and courts will refuse to budge from the archaic altar of absolutism and are of a different mind than we. *State v. Ingel*, 1973, 18 Md.App. 514, 308 A.2d 223, in dealing with an unconstitutional abortion statute, is an example. But *Ingel* is balanced out by *State v. Barquet*, Fla. 1972, 262 So.2d 431, wherein its abortion statute was held unconstitutional because of indefinite, uncertain language and vagueness (same as *Stern*) but held within the decision itself that it was prospective only, declaring only that the rights of those previously convicted have been determined and the holding could give them no comfort. Another, *State v. Edwards*, 1955, 198 Tenn. 83, 277 S.W.2d

444, holds that a statute pertaining to sentencing held unconstitutional or invalid sometime after the defendant was sentenced did not entitle the prisoner to release under the later interpretation. The case of *Warring v. Colpoys*, supra, was followed. And then the federal circuits were evenly divided as to whether *Mapp v. Ohio*, 1961, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, 84 A.L.R.2d 933, reh. den. 368 U.S. 871, 82 S.Ct. 23, 7 L.Ed.2d 72, should be retroactive but *Linkletter*, supra, settled on prospective action only. See note 2 of *Linkletter*. We do not look down on the action of other courts not in accord with us with any feeling of meanness. We realize that without a critical view of each other's work, the eventual "perfect solution" will not be sifted out.

McCLINTOCK, Justice (dissenting)

At the outset of this dissent I must reject the view of the majority that the sweep of statements in *Norton*[1] and *Siebold*[2] "is deceiving." I must also reject the majority view that *Linkletter*[3] "laid to rest as out of tune with the times the concept of Norton * * *." While *Chicot*,[4] a case involving the invalidity of a state statute, states that the observations of *Norton* "must be taken with qualifications," which statement is reiterated in *Linkletter,* I believe that the *Siebold* rule has been recognized, accepted, and applied by this Court in *Miskimins v. Shaver,* 8 Wyo. 392, 58 P. 411, 49 L.R.A. 831 (1899), and can see no reason for qualification or rejection of the rule in this case. Were I to concede that various decisions of the Supreme Court of the United States establish for that jurisdiction the rule that any decision denying the constitutionality of a statute[5] may in the discretion of the court be declared retroactive or prospective in its application, I would further reject any notion that such ruling is binding upon the disposition that we are to make of this case.

In my view *Miskimins* clearly recognizes the distinction between a judgment which is merely erroneous and one which is entered without jurisdiction or authority. An erroneous judgment can be corrected only by appeal; one entered without authority is null and void and leaves the judgment open to collateral attack at any time. It follows, I think, that a judgment of conviction under an unconstitutional criminal statute is one entered without jurisdiction or authority to act and is therefore null and void.

Before considering the facts and holding in *Miskimins,* I would discuss *Siebold* and the law there established. Petitioners therein sought writ of habeas corpus from the United States Supreme Court, hoping thereby to upset a conviction in the United States District Court under a law which petitioners claimed was unconstitutional. Apparently they had not appealed their conviction in the usual way and as stated in the opinion,

"The question is whether a party imprisoned under a sentence of a United States court, upon conviction of a crime created and indictable under an unconstitutional act of Congress, may be discharged from imprisonment by this writ of habeas corpus, although the court has no appellate jurisdiction by writ of error over the judgment." 100 U.S. at 374.

Pointing out that the only ground upon which the court could by habeas corpus give relief to a person convicted in another court "is want of jurisdiction in such court over the person or the cause, *or some other matter rendering its proceedings void*"

1. *Norton v. Shelby County,* 118 U.S. 425, 442, 6 S.Ct. 1121, 1125, 30 L.Ed. 178 (1886). "An unconstitutional act is not a law; * * * it is, in legal contemplation, as inoperative as though it had never been passed."

2. *Ex parte Siebold,* 100 U.S. 371, 376, 25 L.Ed. 717 (1880). "An unconstitutional law is void, and is as no law. An offence created by it is not a crime. A conviction under it is not merely erroneous, but is illegal and void, and cannot be a legal cause of imprisonment."

3. *Linkletter v. Walker,* 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965).

4. *Chicot County Drainage District v. Baxter State Bank,* 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940), rehearing denied 309 U.S. 695, 60 S.Ct. 581, 84 L.Ed. 1035.

5. As I read the case of *Wainwright v. Stone,* 414 U.S. 21, 94 S.Ct. 190, 38 L.Ed.2d 179 (1973), as well as *Warring v. Colpoys,* 74 App.D.C. 303, 122 F.2d 642, 136 A.L.R. 1025 (1941), cert. denied 314 U.S. 678, 62 S.Ct. 184, 86 L.Ed. 543, cited by the majority, these and other cases therein referred to involved a statute which has been construed by a previous decision in a certain way so as not to be unconstitutional. In a later decision the first was overruled and the statute construed in a different way. It is this previous court decision which the courts protect by ruling that the new interpretation is prospective only. I have been unable to find any decisions where the first time that the constitutional question is raised the decision is against the statute. Perhaps it is a distinction without a difference.

(emphasis supplied), the court continued, 100 U.S. at 375:

> "This distinction between an erroneous judgment and one that is illegal or void is well illustrated by the two cases of *Ex parte Lange* (18 Wall. 163) [21 L.Ed. 872] and *Ex parte Parks*, 93 U.S. 18 [23 L.Ed. 787]. In the former case, we held that the judgment was void, and released the petitioner accordingly; in the latter, we held that the judgment, whether erroneous or not, was not void, because the court had jurisdiction of the cause; and we refused to interfere."

and continued, 100 U.S. at 376–377:

> " * * * [W]e are clearly of opinion that the question raised in the cases before us is proper for consideration on habeas corpus. The validity of the judgments is assailed on the ground that the acts of Congress under which the indictments were found are unconstitutional. If this position is well taken, it affects the foundation of the whole proceedings. An unconstitutional law is void, and is as no law. An offense created by it is not a crime. A conviction under it is not merely erroneous, but is illegal and void, and cannot be a legal cause of imprisonment. It is true, if no writ of error lies, the judgment may be final, in the sense that there may be no means of reversing it. But personal liberty is of so great moment in the eye of the law that the judgment of an inferior court affecting it is not deemed so conclusive but that, as we have seen, the question of the court's authority to try and imprison the party may be reviewed on habeas corpus by a superior court or judge having authority to award the writ. We are satisfied that the present is one of the cases in which this court is authorized to take such jurisdiction. We think so, because, if the laws are unconstitutional and void, the Circuit Court acquired no jurisdiction of the causes. Its authority to indict and try the petitioners arose solely upon these laws.[6]

> "We proceed, therefore, to examine the cases on their merits."

While it is true, as pointed out by the majority herein, that the court found the statute constitutional and denied the writ, the point of the case is that the whole justification for its entertainment of the application was on the basis that if the statute was unconstitutional, action thereunder was subject to collateral attack as being beyond the jurisdiction of the court.

In *Miskimins* the petitioner had been adjudged guilty of contempt for refusal to answer certain written questions asked of him in justice court. Application for writ of habeas corpus was denied by the district court and similar application was then filed with this Court. Following an extensive discussion of decisions and authorities relative to the use of this writ, our Court concluded that the question whether the constitutional privilege against self-incrimination had been violated went to the very jurisdiction of the court wherein the privilege was asserted and that it was therefore not necessary to raise the question by appeal. Habeas corpus was held to be a proper remedy. As I read the opinion, the basis of the holding is plainly that denial

---

6. My own examination of both state and federal authorities convinces me that *Siebold* is far from dead, and on the contrary that its pronouncements are still very pertinent. Thus, in *Fay v. Noia*, 372 U.S. 391, 408, 83 S. Ct. 822, 832, 9 L.Ed.2d 837 (1963), we find the quotation included in the majority opinion, plus this additional portion: " 'It is true, if no writ of error lies, the judgment may be final, in the sense that there may be no means of reversing it. But personal liberty is of so great moment in the eye of the law that the judgment of an inferior court affecting it is not deemed so conclusive but that . . . the question of the court's authority to try and imprison the party may be reviewed upon habeas corpus.' " The court then continues: "The course of decisions of this Court from *Lange* and *Siebold* to the present makes plain that restraints contrary to our fundamental law, the Constitution, may be challenged on federal habeas corpus even though imposed pursuant to the conviction of a federal court of competent jurisdiction."

of constitutional rights results in a loss of jurisdiction. The Court said, 8 Wyo. at 412, 58 P. at 416:

> "The acts constituting the alleged contempt are to be examined to ascertain whether in law they constitute a contempt, for if they do not the court was without jurisdiction to imprison and the petitioner is entitled to be discharged on habeas corpus."

A number of cases supporting the view that unconstitutional action is void are cited and quoted from, and in my opinion our Court clearly accepts the principle that proceedings in violation of one's constitutional rights are considered not erroneous but void. Brown on Jurisdiction, with respect to the guarantee of constitutional rights, such as the right against self-incrimination, states: [7]

> "* * * 'The refusal of the court to grant each of the rights above enumerated or all of them goes to the jurisdiction; and if the court has jurisdiction to try the action, it seems to lose jurisdiction once acquired, by a disobedience of the mandates of the constitution; or, rather, the trial ceases to be a legal trial by a deviation from this course. Therefore, when any constitutional right or immunity of a person is violated, the judgment of the court is void. The Supreme Court of the United States, in a recent case say: "It is difficult to see why a conviction and punishment under an unconstitutional law is more violative of a person's constitutional rights than an unconstitutional conviction under a valid law." [8] Under this rule if a court errs in assuming jurisdiction where it does not possess it, or in interpreting a constitutional immunity or right secured

thereby against the prisoner, or in refusing him a constitutional right, the jurisdiction over him ceases and its acts are not simply erroneous, but void. Therefore, it may be laid down as a rule of law, that the error of a court in construing any constitutional immunity or right in a criminal case against the accused is as fatal to the judgment as assuming jurisdiction originally where the court had none. Error in either case destroys the power to render any valid judgment, and if rendered it is not simply erroneous, but void. Brown on Jurisdiction, Sec. 97." 8 Wyo. at 407, 58 P. at 414–415.

Our opinion then refers to *Nielsen*, 131 U.S. 176, 9 S.Ct. 672, 33 L.Ed. 118, and quotes this pertinent passage:

> "* * * 'The distinction between the case of a mere error in law and of one in which the judgment is void is pointed out in *ex parte Siebold*, 100 U.S. 371, 375, 25 L.Ed. 717, and is illustrated by the case of *ex parte Parks* as compared with the cases of *Lange* and *Snow*.[9] In the case of *Parks* there was an alleged misconstruction of a statute. We held that to be a mere error in law, the court having jurisdiction of the case. In the cases of *Lange* and *Snow* there was a denial of a constitutional right.' "

Without entering into an extensive discussion of state decisions, I think there are several such opinions that are of point in this case and take a similar view. Thus in *Ex parte Anderson*, 125 Mont. 331, 238 P. 2d 910 (1951), habeas corpus was held proper to test the right to proceed under an unconstitutional statute, after arrest and before trial, the court quoting directly from *Siebold*, 100 U.S. at 376. In *State v. Ingel*, 18 Md.App. 514, 308 A.2d 223, 227

---

7. The quotation is as set forth in 8 Wyo. at 407 [58 P. at 414].

8. The citation of this case is not contained in our official reporter, but reference to 58 P. indicates that the case cited is *In re Nielsen*, 131 U.S. 176, 9 S.Ct. 672, 33 L.Ed. 118 (1889).

9. The cases referred to are *Ex parte Parks*, 93 U.S. 18, 23 L.Ed. 787 (1876); *Ex parte Lange*, 18 Wall. 163, 21 L.Ed. 872 (1873); and *In re Snow*, 120 U.S. 274, 7 S.Ct. 556, 30 L.Ed. 658 (1889). I shall not further refer to these cases but think that they aptly demonstrate the difference between error in the decision and lack of jurisdiction or authority to make the decision.

(1973), certiorari denied October 16, 1973, the Court of Special Appeals of Maryland discussed decision of the Supreme Court of the United States concerning the principle of retroactivity, and noted that:

"* * * When the purpose [to be served by application of the new standards] involved the reliability of the fact determining process of guilt or innocence, the Court accorded full retroactivity to the decision, without regard to the other two criteria. The rationale of those decisions which accord full retroactivity to a holding clearly requires that a conviction based upon an unconstitutional statute not be permitted to stand no matter when obtained. A declaration that a statute prescribing conduct to be criminal is unconstitutional goes even beyond a question of the reliability of the fact determining process of guilt or innocence. The conduct unconstitutionally proscribed is not a crime; a conviction under it is not merely erroneous, it is illegal, and should not be the cause of punishment. * * * [Citing *Siebold* and *Norton*.] We have no difficulty whatsoever in determining that a decision that a criminal statute is unconstitutional must be fully retroactive so that a judgment thereunder shall not stand."

In *Engle v. Caudill*, Ky., 288 S.W.2d 345, 346 (1956) the court had before it a petition for writ of habeas corpus filed after the statute under which petitioner had been convicted had been declared unconstitutional. Sentence had been pronounced in 1952 and the declaration of unconstitutionality was made in 1953. Pointing out that there had been some change of position on its part as to the right of collateral attack, the court said, referring to a previous decision, *Commonwealth ex rel. Dummit v. Jefferson County*, 300 Ky. 514, 189 S.W.2d 604, 607, 167 A.L.R. 512:

"* * * We noted that there is a recognized right to attack collaterally a judgment of conviction of a crime. As stated in a note appended to our Jefferson County case, supra, 167 A.L.R., p. 519, 'The majority rule is that where a statute or ordinance making certain acts or omissions a crime is held unconstitutional or invalid, a final judgment predicated upon the validity of such legislation is void, generally upon the theory that the court had no jurisdiction to enter the judgment that it did.'"

Cited as to the same effect was *Harrod v. Whaley*, Ky., 239 S.W.2d 480.

Other cases which seem to support this same position and which I do not think need discussion herein are *Hiett v. United States of America*, 415 F.2d 664 (5 Cir. 1969); *McLaurin v. Burnley*, 279 F.Supp. 220 (U.S.D.C.N.D.Miss.1967); *Application of Boyd*, 189 F.Supp. 113 (U.S.D.C.M.D. Tenn.1959); *Bird v. Florida*, Fla.App., 110 So.2d 52 (1959); *Kahler v. Squire*, 49 Wash.2d 911, 299 P.2d 570 (1956).

From all of this it seems to me to follow that if one is convicted and jailed for violation of a law which is unconstitutional, that judgment is void for want of jurisdiction and the question may be raised at any time, and may be by collateral attack upon the judgment. If a party may fail to raise constitutional objections upon an appeal and still raises those constitutional grounds in habeas corpus filed within a month or two, why may he not do the same two years or ten years after the conviction? So far as I am aware, a judgment which is void may be collaterally attacked at any time. I therefore am of the opinion that upon the facts of this case the conviction of Ostwald upon an unconstitutional statute was outside the jurisdiction of the sentencing court and therefore void.

Even if we accept the premise of *Linkletter* and other federal cases that a court may itself elect whether the ruling shall be prospective or retroactive, I do not think application thereof would permit a different result. The Supreme Court says that the constitution neither prohibits nor re-

quires retrospective effect. *Mapp* [10] represented a reversal of a doctrine previously announced in *Wolf v. Colorado,* 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949), and *Linkletter* declines to apply this reversal retroactively to consider other earlier convictions where there might have been a search in violation of Fourth Amendment privileges. The court seems to consider the problem from the standpoint of the practical difficulties. It is pointed out that to apply *Mapp* retroactively would not change lawless action on the part of the police that had already been committed, but basically the refusal seems to be predicated on the difficulty in retroactive administration. "Hearings would have to be held on the excludability of evidence long since destroyed, misplaced, or deteriorated." 381 U.S. at 637, 85 S.Ct. at 1742. To "legitimate such an extraordinary procedural weapon that has no bearing on guilt would seriously disrupt the administration of justice." (*Id.*)

The United States Supreme Court applies the rule on an *ad hoc* basis. In *Stovall v. Denno,* the most recent case which I have found, 388 U.S. 293, 296, 87 S.Ct. 1967, 1969, 18 L.Ed.2d 1199 (1967), citing *Johnson v. New Jersey,* 384 U.S. 719, 726, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), the court says:

" 'These cases[11] establish the principle that in criminal litigation concerning constitutional claims "the Court may in the interest of justice make the rule prospective . . . where the exigencies of the constitution require such an application" . . . .' * * * The cri-

teria guiding resolution of the question implicate (a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards. ' * * * Each constitutional rule of criminal procedure has its own distinct functions, its own background of precedent, and its own impact on the administration of justice. * * *' " (Citing *Johnson*)

In *Johnson,* 384 U.S. at 727, 86 S.Ct. at 1778, the court said:

"As *Linkletter* and *Tehan* acknowledge, however, we have given retroactive effect to other constitutional rules of criminal procedure laid down in recent years, where different guarantees were involved. * * * [Citing *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, 93 A.L.R.2d 733 (1963), and *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, 1 A.L.R.3d 1205 (1964).] In each instance we concluded that retroactive application was justified because the rule affected 'the very integrity of the fact-finding process' and averted 'the clear danger of convicting the innocent.' [Citing *Linkletter* and *Tehan v. Shott,* 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966).]"

Is not a conviction under an unconstitutional statute such a conviction of the innocent?

Considering these cases, and assuming that practical consideration may warrant

---

10. *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, 84 A.L.R.2d 933 (1961), rehearing denied 368 U.S. 871, 82 S.Ct. 23, 7 L.Ed.2d 72.

11. *Linkletter,* and *Tehan v. United States ex rel. Shott,* 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966). See also *Linkletter,* 381 U.S. at 625, 85 S.Ct. at 1735, where, with reference to *Great Northern R. Co. v. Sunburst Oil & Refining Co.,* 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360, 85 A.L.R. 254 the court quotes therefrom that a state " 'may

make a choice for itself between the principle of forward operation and that of relation backward,' " and holding that no federal question of constitutional due process is involved in such decision. If the application of retroactive or prospective application of a ruling on constitutionality of either a statute or procedural rule is discretionary with the Supreme Court of the United States, it must be equally so for this Court, and decisions of the federal Supreme Court are only persuasive. As I shall later indicate. I do not think that on that basis is my dissent at odds.

refusal to apply retroactivity, but without wishing to cavil, I must respectfully disagree with some of the observations of the majority opinion:

"The effect and purpose of *Stern* was to conclude any further prosecutions for breaking and entering under the existing statute."

The purpose of *Stern* [12] was to declare unconstitutional a statute enacted by the legislature and which under many authorities therefore amounted to no law at all. The further observations that the law has been in effect for 77 years and has resulted in many persons being incarcerated in the Wyoming state penitentiary is to me unpersuasive if these are people whose liberty is presently denied by reason of conviction under a void judgment. Considering, then, this further statement in the opinion:

"We have no idea how many defendants may have entered pleas of guilty to breaking and entering by way of plea bargaining to avoid other charges and trial. To smoke them out of the annals of history would be a monumental task. *In any event they were or are incarcerated by trustworthy evidence and means which we must assume in the absence of appeal.* Another unknown is how many are on probation as a result of conviction under § 6–130; to run them down is an unreasonable burden on law enforcement. The administration of justice will be burdened by petitions in coram nobis over long-closed cases. Those sentences have been served or probation ended." (Emphasis supplied.)

I do not think that this represents the type of difficulty which is contemplated by the United States Supreme Court in its various decisions. Retroactive application of the rule declared in *Mapp* and possibly other cases would of necessity require new trials where the evidence has long since disappeared or become obscure. Application of the *Stern* decision to Ostwald's pe-

tition would mean only that his conviction for breaking and entering would be set aside. There would be no new trial on that charge. If the conviction was the result of plea bargaining or an unwise plea of guilty where other charges could have been filed, there may be a practical question as to what the prosecuting attorney would then do, but there is no question concerning what disposition must be made of the particular charge. I especially find unpersuasive the italicized portion of the last quotation and would observe that however trustworthy evidence may be, if the law is unconstitutional so that there is legally no crime, what matter if the evidence is crystal clear? I can see no reason whatever why the defendant should remain incarcerated.

With respect to the statement:

"We can visualize no useful purpose that would be served in reopening the cases of all those presently incarcerated, to determine the effect of the breaking and entering in prosecutions on multiple counts or to determine whether a plea bargain must be set aside to permit a prosecution on the dismissed charge and otherwise review each case.",

I think the useful purpose would be that since we operate under a constitutional system and people should be incarcerated and remain so only under constitutional laws, it is a complete miscarriage of justice to hold that Stern is free from conviction and sentence but that other people who have been convicted under the same unconstitutional law are required to serve their terms. If this makes waves, then let the storm blow.

My conclusion is that we are in no way bound by the decisions of the United States Supreme Court represented by *Linkletter* and the subsequent cases, and even under the rule of these cases we are free to adopt our own rule as to application of the *Stern* decision. At the present time I am not satisfied that there may not exist a

---

12. *State v. Stern*, Wyo., 526 P.2d 344 (1974).

valid distinction between holding a law creating the crime to be unconstitutional and a situation where in the past a defendant may have been convicted under unconstitutional processes. The Attorney General claims that there is no distinction, and under *Miskimins* and *Nielsen* I think I would agree, but I would be inclined to hold in both cases that the denial of constitutional rights should be corrected. I do not think that we need reach that point but think that in this case we should hold merely that the statute was unconstitutional, being unconstitutional the court was without jurisdiction to enter the conviction, and therefore the conviction should be set aside.

ROSE, Justice (dissenting).

I concur with the result reached in Mr. Justice McClintock's able dissent in this case and would add a sense of rebellion against the majority opinion with my own separate views:

It is my hope to reveal the distinction (which I am certain exists in law) between the authority relied upon by the majority and the authority of these dissenting opinions which I resolutely believe should be the law of this case.

If there exists the distinction which I will attempt to draw, it follows that the majority opinion reaches its conclusion to deny the writ through reliance upon inapplicable case and text authority. If, on the other hand, there exists no valid distinction between the case law and other supportive material upon which I rely, then *this* opinion is in error.

The dissent of Mr. Justice McClintock states:

"    .   .   . in this case we should hold merely that the statute (§ 6–130, W.S. 1957) was unconstitutional, being unconstitutional the court was without jurisdiction to enter the conviction, and

therefore the conviction should be set aside." [Parenthetical matter mine]

I would go further to say that since the court in the original case lacked jurisdiction to send Ostwald to prison (by reason of our holding § 6–130, W.S.1957, to be unconstitutional in *State v. Stern*, Wyo., 526 P.2d 344 (1974)), neither the theory nor the authority relied upon by the majority supports a holding that the petition for a writ of habeas corpus should be denied. In my judgment the authorities relied upon in the opinion of the court are not applicable to the issues here and it is my purpose in this dissent to explain why.

First I would suggest that the question for resolution in this case is of the highest order. It is one of the "great issues" that courts must decide as that term is employed in the classical sense. Mr. Justice Raper, the author of the majority opinion, defines the problem when he asks:

"    .   .   . is he (Ostwald) unlawfully confined because of his conviction under a statute subsequently held or determined to be unconstitutional?" [Parenthetical matter mine]

To put it in laymen's language:

Is it all right to enact a law which defines a crime—charge, try (or accept a guilty plea), and sentence to the penitentiary persons accused of violating it and then hold, in the Supreme Court of the State, that the criminal statute was unconstitutional, but, nonetheless, leave the prisoners in the penitentiary to serve their sentences?

The judge and lawyer niceties and word games about whether a law will be interpreted to be "retroactive" or "prospective" will not change the fact that Ostwald and others could be languishing in the State's prison and have assigned to them for life the other stigmata of criminality for having pled guilty to a charge authorized by a statute which the Supreme Court of Wyo-

ming has held is unconstitutional and hence is void ab initio.[1]

How can this be reconciled in law or in conscience?

The majority opinion assumes that we are here involved with the question of resolving the *retroactive* or *prospective* effect of this court's having held § 6–130, W.S.1957, to be unconstitutional in *State v. Stern*, Wyo., 526 P.2d 344 (1974).[2] I suggest that this problem does not even arise in this case.

At the outset, I should say something about the terms "prospective" and "retroactive." It is my belief that we have become "hung up" in an effort to deposit the question with which we are confronted herein into some kind of legal receptacles entitled "retroactive" and "prospective" when the problem was never meant to repose in those catacombs.

*The question in the case is whether the lower court had jurisdiction to sentence a man to prison—not whether the Stern decision will be applied retroactively or prospectively.*

We are *not* here assigned the task, as Mr. Justice Raper says, of resolving:

"the question of the retroactive or prospective effect of the court's holding § 6–130, W.S.1957, unconstitutional."

The reason for my saying this is because I do not find that the law applicable to the problem at hand even permits us to make that decision where, as here, the unconstitutional statute defines and provides a penalty for a crime and where the one applying for the writ of habeas corpus is a prisoner by reason of a void judgment entered under and by authority of the unconstitu-

---

1. "*An unconstitutional law is void, and is as no law. An offence created by it is not a crime. A conviction under it is not merely erroneous, but is illegal and void, and cannot be a legal cause of imprisonment.*" *Ex parte Siebold*, 100 U.S. 371, 376, 25 L.Ed. 717. [Emphasis mine]

The applicable general rule is announced in 16 C.J.S. Constitutional Law § 101, p. 469, under the heading, "Effect of Declaring Unconstitutional." The text there says:

"  .  .  .  .  an unconstitutional statute is void, at all times and its invalidity must be recognized or acknowledged for all purposes, or as applied to any state of facts, and is no law, or not a law, or is a nullity, or of no force or effect, or wholly inoperative. Generally speaking, a decision by a competent tribunal that a statute is unconstitutional has the effect of rendering such statute null and void; the act, in legal contemplation, is as inoperative as though it had never been passed or as if the enactment had never been written, and *it is regarded as invalid, or void, from the date of enactment, and not only from the date on which it is judicially declared unconstitutional.*" [Emphasis mine]

At § 101b, under sub-heading "Remedies, Rights, and Duties," at page 474, the encyclopedia says:

"*The failure of a statute carries with it all remedies therein provided for, and a court has no jurisdiction to try an offense*

based on violation of a statute declared to be unconstitutional; nor may it entertain jurisdiction over certain proceedings where the statute granting such jurisdiction has been held to be unconstitutional.

"An unconstitutional legislative enactment legally binds no one, creates or imposes no obligations, imposes no penalty, and need not be complied with. By such a statute, no rights or immunities can or may be predicated, based or founded on it, built up under it, and no old rights are abrogated; no protection is afforded, no immunity is conferred, no office is created, no power or authority is bestowed on anyone, and no duties are, or can be, imposed. *An offense created by such a statute is not a crime.*" [Emphasis mine]

2. The author speaking for the majority says that this court has original jurisdiction to entertain a writ of habeas corpus pursuant to Article V, Section 3, of the Wyoming Constitution, observing that we do not entertain such a writ unless a showing is made that the writ, if granted, should issue from this court and, in making the observation, says:

"Such a showing has been made (in this case) in that the (this) case will resolve the question of the *retroactive or prospective effect of this court's holding § 6–130, W.S.1957, unconstitutional.*" [Parenthetical matter and emphasis mine]

tional statute. (*The judgment was void under the holding of this court*).[3]

Contrary to the majority's position, I suggest that the case with which we are concerned here presents a question of whether or not the sentencing lower court *ever* had jurisdiction over the cause or the person of Ostwald once § 6–130, W.S.1957, was held unconstitutional.[4] This is not the same as resolving:

"the question of the retroactive or prospective effect of the court's holding § 6–130, W.S.1957, unconstitutional."

It isn't a retroactive or prospective question at all. It is a question of jurisdiction over the cause and the person. The law operates to establish the legal proposition that once the criminal statute under which Ostwald was sentenced had been held unconstitutional, it becomes, therefore, void ab initio—it was no law—and a purported offense committed under it was no crime

—the conviction of Ostwald under such a statute was not simply erroneous[5] in the sense that this court could now do with it what it pleased, including making retroactive or prospective application of the *Stern* holding, according to the court's will.

On the other hand, the conviction simply became illegal and void and the statute could not serve as a legal vehicle of Ostwald's imprisonment. Under the law, as I understand it, Ostwald's release from prison should be automatic with the recording of the *Stern* decision. There is nothing left for courts to do but release him. We are not in the position of being called on to see if the *Stern* decision should apply retroactively or prospectively because the lower court lacked jurisdiction at any stage of the proceedings.

The retroactive or prospective question comes to us for decision making when there is an *overruling decision* in procedur-

3. It was said in *Miskimins v. Shaver*, 8 Wyo. 392, 58 P. 411, 415:
   " 'Therefore it may be laid down as a rule of law that the error of a court in construing any constitutional immunity or right in a criminal case against the accused is as fatal to the judgment as assuming jurisdiction originally where the court had none. *Error in either case destroys the power to render any valid judgment, and, if rendered, it is, not simply erroneous, but void.*' " Brown on Jurisdiction, Sec. 97. [Emphasis mine]

4. The mere fact that we accepted the petition for a writ of habeas corpus for consideration indicates that we recognized that there was a jurisdictional problem in the lower court once *Stern* had been reversed. The general rule is that:
   "a conviction and sentence by a court of *competent jurisdiction* is lawful cause for imprisonment, and no relief can be given by *habeas corpus.*" *Ex parte Siebold,* 100 U.S. 371, 375, 25 L.Ed. 717 (1880). [Emphasis mine]
   We said in *Miskimins,* supra, at 8 Wyo., page 408, 58 P., page 415:
   "*The office of the writ is to determine the legality of the particular imprisonment, and the facts to be considered in determining that question are jurisdictional facts. If upon a consideration of such facts, it ap-*

pears that the court exceeded its jurisdiction in making the order, the petitioner will be discharged upon habeas corpus, . . . " [Italics and emphasis mine]

5. If that had been the case it would have been an appellate problem rather than the proper subject for a writ of habeas corpus over which this court has original jurisdiction. *Miskimins,* supra, says, at 58 P., page 415:
   "The distinction (between petition in error and habeas corpus) is tersely stated in *Re Nielsen,* 131 U.S. 184, 9 S.Ct. 674: 'The distinction between the case of a mere error in law and of one in which the judgment is void is pointed out *Ex parte Siebold,* 100 U.S. 371, 375 (jurisdictional basis), and is illustrated by the case of *Ex parte Parks* [93 U.S. 18], as compared with the Cases of *Lange* [18 Wall. 163] and *Snow* [120 U.S. 274, 7 S.Ct. 556]. (In one case there was no jurisdictional error and in another instance there was. Where there is a jurisdictional question habeas corpus lies; where it is mere error in law it does not lie). In the Case of *Parks* there was an alleged misconstruction of a statute. We held that to be a mere error in law, the court having jurisdiction of the case. In the Cases of *Lange* and *Snow* there was a denial of a constitutional right.' " [Parenthetical matter mine]

al matters—where *overruling decisions* give different interpretations to statutes— or where *prior decisions* are *overruled*— and, perhaps, in other circumstances. But it is not for us to make the retroactivity decision where a decision of the court renders a criminal statute unconstitutional. This has the automatic effect of placing the lower court which handled the case and sentenced the prisoner in the position of having acted without jurisdiction at any phase of the proceeding in which the accused was charged, tried, pled guilty or sentenced.

I distinguish the problem here energized by this petition for habeas corpus from those cases upon which the majority relies and in which constitutional appeals of criminal procedure are involved and where the courts have overruled various of their earlier decisions and have expanded the rights of the defendant, especially in connection with the due process clause of the Fourteenth Amendment. I have in mind *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, 84 A.L.R.2d 933, reh. den. 368 U.S. 871, 82 S.Ct. 23, 7 L.Ed.2d 72, overruling *Wolf v. Colorado*, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782, where it was held that as a matter of due process evidence obtained through an unreasonable search and seizure was inadmissible in criminal proceedings in a state court—*Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, 93 A.L.R.2d 733, overruling *Betts v. Brady*, 316 U.S. 455, 62 S. Ct. 1252, 86 L.Ed. 1595, in which the overruling decision held that as a matter of due

process a state was required to furnish counsel to an indigent defendant in criminal proceedings involving a non-capital offense—*Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, 1 A.L.R.3d 1205, overruling *Stein v. New York*, 346 U.S. 156, 73 S.Ct. 1077, 97 L.Ed. 1522, reh. den. 346 U.S. 842, 74 S.Ct. 13, 98 L.Ed. 362, holding that due process was violated by a state court procedure which left the question whether a defendant's confession was voluntary to the ultimate determination of the jurors who tried him—and *Linkletter v. Walker*, 381 U.S. 618, 85 S. Ct. 1731, 14 L.Ed.2d 601, where a prisoner had initiated habeas corpus proceedings some time after his conviction, where it was held that the overruling decision of *Mapp v. Ohio* (overruling *Wolf v. Colorado*, supra), holding unconstitutionally-obtained evidence inadmissible in state criminal proceedings, was not retroactively applicable to cases in which a conviction had been final, the judgment of conviction had been rendered, the availability of appeal had been exhausted, and the time for petition for certiorari had elapsed before *Mapp v. Ohio* was decided.

I distinguish the matter before this court from those cases where courts were involved in placing a different interpretation upon the same statute, i.e., *Warring v. Colpoys*, 74 App.D.C. 303, 122 F.2d 642, 136 A.L.R. 1025, cert. den. 314 U.S. 678, 62 S. Ct. 184, 86 L.Ed. 543; *Wainwright v. Stone*, 414 U.S. 21, 94 S.Ct. 190, 38 L.Ed.2d 179; and *Sunal v. Large*, 332 U.S. 174, 67 S.Ct. 1588, 91 L.Ed. 1982.[6]

6. The majority opinion, in stating that the rules of *Siebold,* supra, and *Norton v. Shelby County,* 118 U.S. 425, 6 S.Ct. 1121, 30 L.Ed. 178–186 (1886), which hold that an unconstitutional criminal statute is void ab initio, observes that the:

"sweep of such statements is deceiving."

Then the majority refers to *Sunal v. Large,* 332 U.S. 174, 67 S.Ct. 1588, 1593, 91 L.Ed. 1982–1989, and the opinion of Justice Douglas for authority for the proposition that "writs of habeas corpus will not be allowed to do service for an appeal." (Note 8, the majority opinion). But the author of the

majority opinion does not go on to quote the next sentence from Justice Douglas, appearing in 332 U.S. at 178, 67 S.Ct. at 1591, where he says:

"There have been, however, some exceptions. That is to say, the writ has at times been entertained either without consideration of the adequacy of relief by the appellate route or where an appeal would have afforded an adequate remedy. Illustrative are those instances where the conviction was under a federal statute alleged to be unconstitutional (citing *Ex parte Siebold,* 100 U.S. 371, 25 L.Ed. 717 and other cases), where there

**1316**

I distinguish this case from those where courts have overruled their prior decision. *Kelley v. Rhoads, County Assessor,* 7 Wyo. 237, 51 P. 593.[7]

In all of the above categories exemplified by the cases cited, the question of whether to apply an *overruling decision* of the court prospectively or retroactively was properly for the court's determination in view of the fact that the *jurisdiction* of the lower courts had not been lost at any stage of the proceedings and since the cases involved *overruling decisions* in the area of constitutional criminal procedure—*subsequent interpretation* of the same statutes and the *overruling* of prior decisions. The retrospective or prospective effect of subsequent court decisions was indeed a determination that the courts had to make— could make—and should make in those circumstances.

I have no quarrel with the law of that proposition.

There are criteria laid out by the Supreme Court of the United States in *Stovall v. Denno,* 388 U.S. 293, 297, 87 S.Ct. 1967, 18 L.Ed.2d 1199, which have been recognized in the majority opinion here and which, in the above mentioned class of cases, aid and guide courts in making the decision whether to give retroactive or prospective application to an overruling decision. The criteria from *Stovall v. Denno,* supra, are:

"The criteria guiding resolution of the question implicate (a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards."

But those standards do not apply to this case because, here the lower court acted without jurisdiction and we do not have an overruling decision.

In those cases to which the *Stovall v. Denno* criteria apply, the issue is always whether or not the overruling decision of the court would be applied retroactively to benefit those who have been affected to their detriment by a prior ruling, or prospectively so that the overruling would have applicability only to the case out of which the decision arose and those cases following it.

As an example of the distinction that I attempt to make between the matter currently before the court and the theory and cases upon which the majority opinion relies, I observe that the majority cites 10 A.L.R.3d, and under the general heading of this annotation the subject matter is headed as follows:

"Prospective or Retroactive Operation of *Overruling Decisions.*" [Emphasis mine]

And then at page 1377, the author says:

"This comment collects and analyzes a representative selection of the cases treating the question *whether an overruling decision should be given retroactive effect or should operate only prospectively.* [Italics mine]

"For purposes of this discussion, an *overruling decision* is one by which the

---

was a conviction by a federal court whose jurisdiction over the person or the offense was challenged (citing cases), where the trial or sentence by a federal court violated specific constitutional guaranties (citing cases)."

7. We said in that case, at 51 P. 605: "The effect of a decision of the supreme court construing a statute renders it the law for the time being as so construed. Parties have a right to act upon such a decision, and no injury ought to be allowed to result, by reason of a dependence thereon, if the deci-

sion is subsequently changed, any more than in case of a repeal of a statute. (Citing *Hollinshead v. Von Glahn,* 4 Minn. 190, Gil. 131). Until the decision now rendered, since the announcement of the court in the cases hereinbefore referred to, the law of the State has been as set forth and adjudged in those cases, at least to the extent that no one should be injured by relying thereon. Consequently, any case which has been brought against the collecting officer in his individual capacity should be permitted to proceed without objection on that ground."

court expressly rejects a rule of law which had been announced and adopted in an earlier decision of the same court." [Italics mine]

The cases upon which the majority calls for authority are those having to do with the problem of giving effect to an overruling decision. It must immediately appear that any cases which fit into this annotation under this heading cannot be applicable to the question to which we here address ourselves in response to this petition for writ of habeas corpus because we are not, in the instant matter, determining the effect of giving retroactive or prospective application to "overruling decisions." We have no overruling decision in this case. We do not have a prior decision to overrule. We have not given a subsequent interpretation to either a statute or a prior case ruling. We have simply declared a statute unconstitutional, the effect of which—under the law—is to render the lower court to have been without jurisdiction at any stage of its proceeding and therefore incapable of making an order sentencing the petitioner to the penitentiary.

On the other hand, the result reached by the majority comes on as a result of assuming that we have a retroactive or prospective decision to make, but, as I have said, I do not think we do.

It may be that there is no further good purpose to be served by further analysis since the cases relied upon by the majority are concerned with overruling decisions as such decisions will or will not be applied retroactively or prospectively. However, let me make these thumbnail observations:

It is said by the majority:

"In *Warring v. Colpoys,* 1941, 74 App. D.C. 303, 122 F.2d 642, 136 A.L.R. 1025, cert. den. 314 U.S. 678, 62 S.Ct. 184, 86 L.Ed. 543, the court was confronted with the identical question that we have here:"

I cannot agree that *Warring* presents "the identical question that we have here." There was no constitutional question involved in *Warring.* The Court was there concerned with whether or not it should apply retroactively or prospectively an overruling decision pertaining to statutory construction. The case presented no problem involving lower court jurisdiction as Ostwald does. It simply effectuates the rule that the original court holding was the law until it was overruled. I accept that —that, in effect, is the rule of *Kelley v. Rhoads,* Wyoming, supra.

The author of the majority speaks of "identical views" (to those of the majority) to be found in the Supreme Court case of *Chicot County Drainage District v. Baxter State Bank,* 308 U.S. 371, 374, 60 S.Ct. 317, 84 L.Ed. 329, reh. den. 309 U.S. 695, 60 S.Ct. 581, 84 L.Ed. 1035 (1940).

Unlike *Siebold,* supra,[8] the Court in *Chicot,* supra, had declared a municipal bond statute authorized under an act of Congress to be unconstitutional. The problem, like *Warring,* was whether to give an overruling decision retroactive or prospective effect when the original proceedings were under collateral attack—the parties having failed to raise the issue in the principal case. The Court held that where this kind of a statute was under collateral attack and where it had not been questioned at the trial it was res judicata. I fail to see where this case is "identical" to the views expressed by the majority and especially it does not reach the rule applicable where a criminal statute has been held unconstitutional, making it void from its passage, thus causing the lower court to have acted without jurisdiction.

---

8. *Siebold* was concerned with the following question:

"The question is whether a party imprisoned under a sentence of a United States Court, upon conviction of a crime created by an indictable under an unconstitutional act of Congress, may be discharged from imprisonment by this Court on habeas corpus, although it has no appellate jurisdiction by writ of error over the judgment." (From *Siebold,* supra, opinion)

The majority opinion places much store in the rule of *Linkletter v. Walker,* supra. *Linkletter* was concerned with the question of whether to apply the exclusionary principle enunciated in *Mapp v. Ohio,* supra, to state court convictions which had become final prior to the rendition of the *Mapp* opinion. This presented a classic question of retroactive or prospective inquiry. There was an overruling constitutional procedural opinion (overruling *Wolf v. Colorado,* supra) and the jurisdiction of the original court was not questioned. This did not present the same question with which we are here concerned for all the reasons stated herein.

Like Mr. Justice McClintock, I believe that *Siebold* [9], supra has been:

"recognized, accepted and applied in this court in *Miskimins v. Shaver,* 8 Wyo. 392, 58 P. 411 (1899)."

*Miskimins* says that a proceeding in violation of constitutional rights renders it void. We quoted Brown on Jurisdiction, § 97, at 8 Wyo., page 407, 58 P., page 415, where the author said:

"Therefore it may be laid down as a rule of law that the error of a court in construing any constitutional immunity or right in a criminal case against the accused is as fatal to the judgment as assuming jurisdiction originally where the court had none. Error in either case destroys the power to render any valid judgment, and, if rendered, it is, not simply erroneous, but void."

In the case at hand the lower court, having acted under an unconstitutional statute, did so without jurisdictional authority and therefore all proceedings therein are void, including the sentencing of Ostwald to the Wyoming State Penitentiary.

This leaves nothing more for the courts of Wyoming to do but to grant the writ.

There is no problem of giving retroactive or prospective applicability to the *Stern* decision. That matter took care of itself by the operation of the rule applicable to it, i.e.,:

"A conviction under it (an unconstitutional statute) . . . . is illegal and void, and cannot be a legal cause of imprisonment." *Siebold,* supra.

The lower court's authority to try and sentence Ostwald arose solely by virtue of § 6-130, W.S.1957, and if the law is void the court acquired no jurisdiction of the person or the cause.

The rules of retroactivity and prospectivity apply where overruling decisions have been rendered in such areas as constitutional procedural questions—subsequent statutory interpretations—overruling prior decisions of the court—and numerous other areas. But the retroactivity or prospectivity problem simply cannot present itself in situations where the court out of which the original decision emanated lacked jurisdiction to act as it did. The problem does not arise in those circumstances either in logic or in law, and it is, in my judgment, error to assume that this case can be resolved on such a theory.

For all of the reasons stated herein I would grant the writ.

---

9. "An unconstitutional law is void, and is as no law. An offence created by it is not a crime. A conviction under it is not merely erroneous, but is illegal and void, and cannot be a legal cause of imprisonment."